J. A. PUTNAL AND B. H. WILCOX, *Appellants* v. S. R. WALKER, *Appellee.*

1. An infant's sale of his property, whether it is real estate or presonalty, transmits the title and is voidable only. Its validity does not depend on the ratification after the minor has attained his majority, but, to avoid it, he must, by some act, clear and unmistakable in its character, disaffirm its validity.

2. Where no estoppel arises against an infant at the time he makes a deed during infancy, and when there are no circumstances and no affirmative acts of his, making it inequitable for him to remain inactive after attaining his majority, his mere silence or inertness for a period of less than seven years as fixed by our statute of limitations, after he reaches his majority does not bar his right to disaffirm his deed made during infancy.

3. Where the infant, upon his arrival at majority, or at the time he seeks disaffirmance, still has the consideration received or any part thereof he must, upon his disaffirmance, return it; but where he has disposed of, lost, or wasted the same during his infancy his right to disaffirm is in no way dependent upon his making good to the other party what he received.

4. Representations made by the infant as to his being of age in order to estop him from disaffirming a contract made by him during infancy must have been fraudulently made by the infant and believed in, relied on, and acted upon by the other party. An attempt to deceive will be immaterial unless it has resulted in actual deception and consequent injury.

This case was decided by Division B.

Appealed from the Circuit Court for Taylor County.

The facts in the case are stated in the opinion of the court.

*Thos. B. Adams,* for Appellants;

*W. B. Davis,* for Appellee.

PARKHILL, J.—The appellee, Walker, filed a bill against Wilcox and Putnal in the Circuit Court for Taylor County to cancel Putnal's deed from Wilcox as a cloud upon Walker's title derived from Wilcox, and alleging that the land was wild and unimproved. Putnal answered, setting up adverse possession of the interest claimed by Walker when suit was instituted, also alleging the invalidity of Walker's deed by reason of Wilcox's minority when the deed was made, and alleging Wilcox's repudiation thereof after attaining his majority. After the taking of testi-

46 Vol. 61

mony, the chancellor, upon final hearing, found the equities in favor of Walker and ordered the deed to Putnal cancelled. From this decree the defendants appealed.

On the 23rd day of July, 1901, the appellant, B. H. Wilcox, executed a deed for certain described land to S. R. Walker, appellee. On the 24th day of January, 1908, the said Wilcox executed a deed for the same land to J. A. Putnal. Wilcox was born on the 8th day of September, 1883, and attained his majority in 1904. The deed by Wilcox to Putnal recites: "Witnesseth, also, that the said Boss H. Wilcox does by this deed repudiate and disaffirm a certain deed of the said property above described made by said Boss H. Wilcox to one S. R. Walker on July 23rd, 1901, for the reason that on said July 23, 1901, the said Boss Wilcox was then a minor having attained the age of 21 years on September 8, 1905, and for the further reason that the consideration for the said deed made to S. R. Walker failed."

The third assignment of error is: "Said decree of Nov. 8, 1910, is erroneous because the evidence shows that Wilcox was a minor at the time Walker obtained deed from him, and that Wilcox repudiated the same within less than seven years after his majority."

An infant's sale of his property, whether it is real estate or personalty, transmits the title and is voidable only. Its validity does not depend on the ratification after the minor has attained his majority, but to avoid it he must, by some act clear and unmistakable in its character, disaffirm its validity. 16 Am. & Eng. Ency. Law (2nd. Ed.) 283.

The right of an infant to avoid his contract is one conferred by law for his protection against his own improvidence and the designs of others; and though its exercise is not infrequently the occasion of injury to others who have in good faith dealt with him, this is a consequence

which they might have avoided by declining to enter into the contract.   It is the policy of the law to discourage adults from contracting with infants, and the former cannot complain if, as a consequence of their violation of this rule of conduct, they are injured by the exercise of the right with which the law has purposely invested the latter, nor charge that the infant, in exercising the right, is guilty of fraud.   Tucker v. Moreland, 10 Pet. (U. S.) 58;

How soon after attaining majority the quandam infant or those claiming under him, must disaffirm his contract or conveyance in order to make the plea of infancy effective, is a question upon which the decisions are at variance. Some courts hold to the doctrine that the privilege of avoiding his acts must be exercised by the infant within a reasonable time after coming of age; but the preponderance of authority is that in contracts executed by infants mere inertness or silence continued for a period less than that prescribed by the statute of limitations, unless accompanied by affirmative acts manifesting an intent to assent to the contract, will not bar the right to avoid it.   We think, therefore, that where no estoppel arises against an infant at the time he makes a deed during infancy, and when there are no circumstances, and no affirmative acts of his making it inequitable for him to remain inactive after attaining his majority his mere silence or inertness for a period of less than seven years, as fixed by our statute of limitations, after he reaches his majority does not bar his right to disaffirm his deed made during infancy.

In Kountz v. Davis, 34 Ark. 590, it was held: "An infant who has executed a deed has seven years after coming of age in which to disaffirm it." This period of seven years was the period of the statute of limitations similar to the Section 1723 of the General Statutes of 1906.

Greenleaf in the second volume of his work on evidence,

16th edition, Section 367, note five, says: "The mere acquiescence for years to disaffirm it affords no proof of ratification. There must be some positive and clear act performed for that purpose. The reason is that by his silent acquiescence he occasions no injury to others, and secures no benefits or new rights to himself. There is nothing to urge him as a duty towards others to act speedily. Language, appropriate in other cases, requiring him to act within a reasonable time would become inappropriate here. He may, therefore, after years of acquiescence by entry or by conveyance of estate to another person, disaffirm and void the conveyance made during his infancy."

In McCarthy v. Nicrosi, 72 Ala. 332, text 335, the court said: "In the case of an executed conveyance of real estate, or any interest in it, mere acquiescence will not operate as ratification. There must be some positive and unequivocal act performed for the purpose which is inconsistent with the subsequent right to repudiate it, unless sale and conveyance have been acquiesced in for a length of time sufficient to perfect a bar under the statute of limitations."

In Wimberly v. Jones, 1 Ga. Dec. 91, the holding is as follows: "An infant, on arriving at full age, may disaffirm his deed by conveying the same property to another, if he do so before the statute of limitations gives to the party holding the first deed a statutory title." See also, Hoffert v. Miller, 9 Ky. Law 732, 6 S. W. Rep. 447; Boody v. McKenney, 23 Me. 517; Davis v. Dudley, 70 Me. 236, 35 Am. Rep. 318; Prout v. Wiley, 28 Mich. 164; Ship v. Mcgee, 80 Miss. 741, 32 South. Rep. 281; Lacy v. Pixler, 120 Mo. 383, 25 S. W. Rep. 206; Jackson v. Carpenter, 11 Johns. (N. Y.) 539; Green v. Green, 69 N. Y. 553, 25 Am. Rep. 233; Hughes v. Watson, 10 Ohio 127; Gillespie v. Bailey, 12 W. Va. 70, 29 Am. Rep. 445; Birch v. Linton, 78 Va. 584, 49 Am. Rep. 381.

It is not necessary, in order to give effect to the disaffirmance of Wilcox's deed to Walker, that Wilcox should have returned the consideration received by him, for the evidence shows that Wilcox both disposed of the mule that he received for the land as soon as he received it, and wasted the proceeds during his infancy; the rule being that where the infant, upon his arrival at majority, or at the time he seeks disaffirmance, still has the consideration received, or any part thereof, he must, upon his disaffirmance, return it, for the law will not allow him to repudiate his contract and at the same time retain its fruits as his own; but where he has disposed of, lost, or wasted the same during his infancy his right to disaffirm is in no way dependent upon his making good to the other party what he received, for the privilege of repudiating the contract is accorded to an infant because of the indiscretion incident to his immaturity; and if he were required to restore an equivalent, where he has wasted or squandered the property or consideration received, the privilege of repudiating would be of no avail when most needed. 22 Cyc. 615; 18 Am. & Eng. Ency. Law (2nd. Ed.) 293.

We do not think the evidence sufficient to show an estoppel against Wilcox to disaffirm his deed to Walker on the ground of a misrepresentation by Wilcox as to his age at the time he executed the deed in question. The doctrine of estoppel not being as a general rule applicable to infants, the courts will not readily hold that his acts during infancy have created an estoppel against him to disaffirm his contract. According to some authorities the fact that an infant at the time of entering into a contract falsely represented to the person with whom he dealt that he had attained the age of majority does not give any validity to the contract, or estop the infant from disaffirming the same, or setting up the defense of infancy against the enforce-

ment of any rights thereunder; but there is also authority for the view that such false representations will create an estoppel; but where the latter doctrine prevails the representation made by the infant as to his being of age, in order to estop him, must have been fraudulently made by the infant and believed in, relied on, and acted upon by the other party. 22 Cyc. 611. Of course an attempt to deceive will be immaterial unless it has resulted in actual deception and consequent injury. Herman on Eqr. Estoppel, § 425.

The deed made by Wilcox to Walker describes Wilcox as an unmarried man, over the age of twenty-one, but Walker testified that he remembered that Mr. Hendry, who prepared the deed from Wilcox to Walker, read the same at the time it was executed, but he said he did not "remember the clause in reference to Wilcox being over the age of twenty-one years; that made no impression on me because I thought all deeds in Florida had to show that." He further testified, in reference to the words "over the age of twenty-one," "As a matter of fact, I * * * did not know they were there till a year or two later."

J. A. Putnal testified that the deed was read in his and Walker's presence by Mr. Hendry, deputy clerk of the court, and Putnal asked Walker if he was aware of the fact that he was trading with a minor. Putnal said that, prior to the making of the deed, he told Walker Wilcox was a minor.

W. H. Evans testified that, when the deed was drawn up, Putnal asked Walker if he knew what he was doing. Walker said he thought he did. Putnal said, "I guess you know he is a minor."

W. T. Hendry testified that he was Deputy Clerk of the Circuit Court when Wilcox made the deed in question to Walker. Hendry prepared the deed. He testified

that Putnal told him that Wilcox was a minor; that the question of Wilcox being a minor arose at some time during the preparation of the deed; that Putnal raised the question of Wilcox being a minor in Walker's presence while the deed was being drawn or prepared. "While the deed was being prepared Mr. Putnal was sitting to my right and Mr. Walker was sitting to Wilcox's left." Mr. Walker testified that he "remembered a conversation of Mr. Putnal's a half hour *later,* something after the trade, out in the hall of the court house, and he asked me something about my having traded with a minor." Putnal stated that Wilcox was a minor. He further testified that the mule was delivered to Wilcox a few minutes after the deed was made. He did not recollect "for sure" whether he saw Mr. Putnal after delivering the mule to Wilcox, but thought he did. Walker was asked, "Isn't it more likely that this conversation (with Putnal about Wilcox's minority) was had in the hall before you went to deliver the mule, and after the mule was delivered that the party separated?" He answered, "I am not impressed that way, I don't think so." On the same day, just after the trade was made, Walker said to J. F. Foster, "I beat you to it" (meaning the land). Foster replied, "that boy is a minor, and if you want to buy a lawsuit you are welcome to it." Walker admitted "such conversation or something like it might have taken place."

From all this we think Walker had knowledge of Wilcox's minority during the time of the preparation of the deed and before the delivery of the mule that was given for the land. Certainly, from his own admission, he knew this fact in a half hour after the execution of the deed and took no steps to protect himself. All the evidence shows that Walker knew that Wilcox was a minor. As was said in a like case, Cobbey v. Buchanan, 48 Neb. 391,

67 N. W. Rep. 176, "there is no evidence whatever in the record that, when Buchanan represented to Cobbey that he was of age, Cobbey believed such representation, or relied on or acted upon it. In fact, all the evidence shows that Cobbey was fully aware of the fact that Buchanan was a minor."

In Sims v. Everhardt, 102 U. S. 300, text 312, the court said:

"The remaining question is whether she is estopped by anything which she has done from asserting her right to the land in controversy. In regard to this very little need be said. It is not insisted that she did anything since she attained her majoriy which can work an estoppel. All that is claimed is that when she made her deed she asserted that she was of age and competent to convey. We are not, therefore, required to consider how far a married woman can be estopped by her acts when she has the single disability of coverture. The question is, whether acts and declarations of an infant during infancy can estop him from asserting the invalidity of his deed after he has attained his majority. In regard to this there can be no doubt, founded either upon reason or authority. Without spending time to look at the reason, the authorities are all one way. An estoppel *in pais* is not applicable to infants, and a fraudulent representation of capacity cannot be an equivalent for actual capacity. *Brown* v. *McClune,* 5 Sandf. (N. Y.) 224; *Keen* v. *Coleman,* 39 Pa. St. 299. A conveyance by an infant is an asserting of his right to convey. A contemporaneous declaration of his right or of his age adds nothing to what is implied in his deed. An assertion of an estoppel against him is but a claim that he has assented or contracted. But he can no more do that effectively than he can make the contract alleged to be confirmed."

The youthful appearance of Wilcox seems to have been sufficient to suggest the idea that he might be a minor, for Walker testified that he asked Wilcox if he could make a good deed. Walker was asked, "why did you ask him (Wilcox) if he could make a good deed? Did you have any doubt about his being twenty-one?" Walker answered, "why his youthful looks might have went along to prompt the question, his youthful looks along with other things might have prompted the question." Wilcox did not tell Walker he was twenty-one years old, but told him he could make a good deed and had made a deed to other property. If this had reference to his having attained his majority, Walker knew otherwise, as we have seen.

There are no other circumstances since he arrived at his majority to work an estoppel against Wilcox to disaffirm his deed to Walker. He did not stand by and see Walker enter upon the land and erect improvements thereon, or sell the same to another. The bill filed by Walker alleges the land to be wild and unimproved, and there is no claim here that Wilcox stood by while Walker sold the same to an innocent purchaser. Walker claimed to have owned the land when Wilcox sold it to Putnal and disaffirmed the deed to Walker. Indeed, the evidence shows that Wilcox during the year 1902 went to Cuba and did not return until January, 1908.

The decree is reversed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J. concur in the opinion.