HENDRY, Judge.
The appellant was defendant below, in an action by the appellee, his father, based upon breach of contract. Some of the testimony of the parties was conflicting; however, the material facts necessary for an understanding of our decision may be stated as follows: During the appellant’s last year of high school, i. e., at age 18, the subject of the appellant’s future education was seriously discussed between the parties. At the conclusion of this discussion, the appellee agreed to pay for his son’s future educational expenses. The appellant denies that an understanding was reached that such expenses were to be repaid.
Thereafter, the son entered upon a course of college and post-graduate education ultimately leading to his obtaining the degree of doctor of dental surgery. This course of education consumed eight years, and at least once during each of those years, the parties had occasion to discuss the nature of their financial obligations to one another. The gist of these conversations was related to the jury only by the testimony of the parties themselves.
To adequately meet the expenses of his son’s premedical and post-graduate education, the appellee, whose employment was that of a salesman, mortgaged his home and took out loans against existing life insurance policies. The ensuing consequences which emanated from the above acts caused eventual hardship to the appellee.
The appellant graduated from dental school in 1962. The father did not attempt to demand repayment of the monies he had expended for the son’s education until June, 1964, at which time he wrote to his son a letter which recited his appraisal of the circumstances surrounding their mutual obligations, and concluded by requesting that the son begin repaying to the appellee the sum of $30,000.00. Repayment was requested by installments in the amount of $400.00 per month.
The testimony shows that after the son received the letter, he and his father had telephone conversations wherein they ultimately determined that the total amount owing was the sum of $24,000.00. On June 28, 1964, the appellant wrote to his father a letter in which he agreed to repay a total debt of $24,000.00 at the rate of $100.00 per month. The letter reads in pertinent part:
“ * * * Four hundred dollars is a lot of money to write a check for each month. According to my memory I offered to pay $100 per month to help re-pay some of the expenses of my college education. “We will be happy to pay $100 each month to you, as I had originally promised. However we cannot afford to pay any more than this.
% íjí ^ ‡ ‡
“According to my records 240 monthly payments of $100 each, will repay the cost of my education. Or the total amount of $24,000 will be paid back on or before July 1984. We also reserve the right to skip any payment if we are not financially able to pay and there is no interest charges or any other strings attached.”
Accordingly, the appellant paid the sum of $100.00 per month for the next three years until September, 1967, at which time he had paid a total sum of $3,846.00. Other matters credited to the account of the *644 parties ultimately reduced the outstanding balance to $19,345.00. After the above date, no further payments were made. Another letter from the appellant to his father followed the termination of repayments, and therein, the appellant expressed his opinion that he was never, at any time, duty-bound to repay the monies expended by his father in the past.
Following the receipt of the above letter, the appellee deliberated for some three or four months before deciding to litigate the issue. The trial came on before a jury; at the close of the plaintiff’s evidence, the appellant moved for a directed verdict, which motion was denied. The case was thereafter tried to a conclusion and the jury returned its verdict in favor of the appel-lee-father, awarding him the amount which he had alleged to be outstanding, $19,345.-00.
The appellant has mounted a series of legal attacks upon the foundations of this law suit. However, we must affirm the final judgment, ánd as grounds therefor, demonstrate those doctrines existing in the law of contracts which will sustain the appellee’s cause of action.
There is no dispute that the appellant was an infant when the parties first contemplated this obligation. However, the specific issues in respect to the creation of an enforceable contract were submitted, via the court’s charges, to the jury. By its verdict, the jury resolved the conflicting evidence in favor of the appellee, thus determining that an enforceable contract had indeed been created.
As to the issue of whether an infant’s contract is void or voidable, see the case of Lee v. Thompson, 124 Fla. 494, 168 So. 848. Therein the court stated:
“Since the contracts of an infant are voidable or de facto, that is to say, subject to the possibility of disaffirmance, it follows that when the infant attains his majority and ratifies a contract made in infancy its infirmity is removed and it will be treated as valid from inception and the optional right to disaffirm abandoned. Ratification does not now require a new consideration to make it binding [citation omitted].”
Thus, our attention is next focused on the issue of whether or not the appellee proved that the appellant, having attained majority, thereafter ratified the contractual agreement to repay his father for the amounts expended for education. The jury had before it evidence that the appellant had received and accepted the benefits of his father’s contractual agreement, i. e., to pay for educational and related expenses, for a period of four years after obtaining his majority; evidence of oral affirmances by the appellant that the agreement he made during his infancy was valid and binding, such affirmances having been made after he attained majority; the hand-written letter cited above, which affirmed the agreement and the obligation therein; and evidence showing monthly payments over a period of three years, specifically noted as “college payment”, and “education refund”. It appears that the trial court was eminently correct in submitting the case to the jury on the issue of whether or not the appellant had ratified the act committed during infancy, after he had attained majority. The jury determined that he had so ratified, and its finding should stand. - See Putnal v. Walker, 61 Fla. 720, 55 So. 844, 36 L.R.A., N.S., 33.
We must also answer the question of whether a parent may maintain an action against his child based on breach of contract. Such an action is permissible. See 24 Fla.Jur. Parent and Child § 22. Our research has uncovered only one case which squarely deals with the issue of whether a parent may enforce an action against his child based on breach of a contract to repay the parent for educational expenses of the child, when such contract was entered into "during the child’s infancy, Watzel v. Beardslee, 1939, 289 Mich. 522, 286 N.W. 813. That case primarily involved whether *645 or not the father could properly demonstrate solvency during the course of certain bankruptcy proceedings. In the lower court, the father had given the circuit judge an estimate of his assets and liabilities, including in that net worth statement an asset listed as “claim against son” for $1,075.00. This was, in the father’s opinion, based upon an obligation of the son to repay him for monies spent on the son’s college education. The trial, court said:
“I am not impressed that the item listed as ‘claim against son’, in the sum of $1,075.00, should be considered in arriving at the total assets of Walter E. Beardslee at the time in question. So far as the record shows it was never evidenced by note or other formal writing. Considering its inception, the relationship of the parties and the manner in which it was ultimately discharged it seems to me that it was strictly a recognition of a moral obligation. It seems to me that the promise, if made as alleged, was based entirely upon past consideration and under the general rule applicable, and the circumstances under which it was given would not constitute a binding promise upon the son.”
The Supreme Court of Michigan, responding to the lower court’s assessment as to the legal significance of Beardslee’s “claim” against his son for college expenses, stated at page 815:
“The loan to the son was such as, under the promise, made by the son at the time, carried a moral obligation to make repayment and the son, upon reaching his majority, ratified the obligation by promise then to repay, followed by repayment * * *. Such ratification made repayment an obligation upon which the father could invoke legal remedy. The fact that part payment was made in pursuance of an agreement with the father that it would be employed in education of a daughter does not in any degree lessen the legal effect of the ratification of the debt, and serves only in reduction of the amount thereof.
***** *
“The son desired a higher education than that required to be furnished by the father and, in order to obtain the advantages thereof, agreed to repay his father for the expense. The father advanced the money. If it be held that the obligation to repay was not a legal one because of the minority of the son, because voidable at his election upon reaching majority (upon which there is a conflict of authority), it does not follow that the son could not recognize and ratify the obligation upon reaching his majority, as he did, and render the same an enforceable legal obligation.”
Thus, it appears to us that the legal doctrines underlying the appellee’s cause of action sustained the trial judge’s decision to deny the appellant’s motion for directed verdict and submit the case to the jury as to the issues of meeting of the minds, and ratification by the quondam infant. The final judgment being appealed is therefore affirmed.
Affirmed.