LAURA CUMMINGS, a Minor, by Peoples Bank of Bloomington, Guardian of the Estate of Laura Cummings, Plaintiff-Appellant, *v.* MARK A. JACKSON *et al.*, Defendants.—(THE CITY OF BLOOMINGTON *et al.*, Defendants-Appellees.)

Fourth District   No. 14584

Opinion filed February 7, 1978.—Rehearing denied March 10, 1978.

WEBBER, J., concurring in part and dissenting in part.

Robert L. Silberstein, of Peoria, for appellant.

Bane, Allison & Saint, P. C., and Costigan & Wollrab, both of Bloomington (Robert W. Neirynck, of counsel), for appellees.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

This case involves a suit brought on behalf of a minor child to recover for personal injuries received on June 21, 1974, when she was hit by an automobile in a street in front of her mother's house in the city of Bloomington. At issue is an interpretation of the doctrine of parental immunity and an analysis of the rules determining the degree of care owed by the owners and occupiers of land to children who come onto the land.

The complaint filed in the circuit court of McLean County on behalf of plaintiff Laura Cummings was brought by the guardian of her estate, Peoples Bank of Bloomington. The complaint eventually contained six counts. Prior to trial count V, directed against plaintiff's mother, Ladonna Cummings, and count VI, directed against defendant City of Bloomington, were dismissed upon motions of those defendants. The other counts were submitted to the jury, resulting in verdicts and subsequent judgments for defendants to those counts. The only questions before us on appeal concern the propriety of the dismissal of counts V and VI.

Count V charged that defendant Ladonna Cummings negligently and in violation of city ordinance failed to trim trees in the grass parking between the edge of the street and her nearest property line. This failure was alleged to have obstructed the view of the driver of the automobile that hit plaintiff and to have been a proximate cause of her injuries. Defendant mother's motion to dismiss this count involved the doctrine of "parental immunity" claiming that no suit by a child against a parent for injuries incurred in the manner alleged was permissible.

In full force, the doctrine of "parental immunity" would, as its name implies, prohibit suits by children against their parents. No supreme court case has directly ruled upon the question of whether tort actions for negligence between children and parents may be maintained. In *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525, that court ruled that suits for willful and wanton misconduct were not prohibited but stated that the doctrine did prevent suits for ordinary negligence. The court said that the purpose of the rule was to preserve family unity and reasoned that suits for negligence would have a tendency to disrupt family unity but that if willful and wanton conduct was involved the family unity would already be disrupted. The court deemed the prevention of suit under the latter circumstances to be grossly unfair. Dictum in *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137, approved the *Nudd* analysis.

In *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12, a negligence suit brought by a father against a daughter for running into him with a car while he was a pedestrian in a street, this court further limited the immunity to situations where the duty breached arose out of the family relationship. Recovery was permitted. The rationale was that a suit charging a breach of a duty owed the general public is not as disruptive to a family's unity as one charging breach of a duty owed primarily to family members and thus bringing into contention the inner workings of the family. *Schenk* acknowledged the logic of observing the doctrine of immunity when the injury arises out of the family relationship. In *Cosmopolitan National Bank v. Heap* (1970), 128 Ill. App. 2d 165, 262 N.E.2d 826, immunity was upheld in a case where the complaint alleged that a child was injured because of the failure of a parent to maintain a stairway in the family's home. The court considered the injury to have arisen out of the family relationship and stated its approval of the *Schenk* analysis that would uphold immunity of a parent under those circumstances.

■■ In the instant case the duty alleged to have been breached by the mother concerned the maintenance of trees on the area immediately adjacent to the home. The duty was owed primarily to the general public, however, and only incidentally to the members of the family living in the house. Although the question is a close one, we consider the situation to be more analogous to *Schenk* than to *Heap* and conclude that the injury to plaintiff was not alleged to arise out of the family relationship. We rule the dismissal of count V to be error.

Defendant City of Bloomington was charged not only in count VI which was dismissed but in count II which was submitted to the jury. That count charged the city with negligently maintaining a traffic hazard by placing trees along the parking and failing to inspect them to see if they were a hazard, placing a tree closer to the parking than permitted by ordinance or allowing the tree to remain there, placing or permitting a tree to remain so close to the street that when shoots and sprouts grew at the base, the view of pedestrians by motorists was obstructed, allowing a tree to become overgrown and untrimmed and failing to warn motorists that children were playing in the area. Count VI was based upon the decision in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836. Plaintiff maintains that it sets forth a different theory of recovery than count II. Defendant City maintains that it was duplication to count II and properly dismissed.

■■ In *Kahn* suit was brought on behalf of a child injured while playing as a trespasser on lumber piled in a dangerous manner by a supplier upon land occupied by a building contractor. In ruling that recovery might be allowed against the supplier and contractor, the court

rejected the use of the label "attractive nuisance" in analyzing the duty of the two defendants to the trespassing child. Rather, the court stated that the proper basis lay in "the customary rules of ordinary negligence cases." (5 Ill. 2d 614, 624, 126 N.E.2d 836, 841.) The court noted that ordinarily the owner or occupier of land owed no duty of ordinary care to persons coming on their land without invitation but recognized that the rule was not without exception. The heart of the opinion is contained in the following explanation of that exception:

> "It is recognized, however, that an exception exists where the owner or person in possession knows, or should know, that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land, which is likely to cause injury to them because they, by reason of their immaturity, are incapable of appreciating the risk involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children. In such cases there is a duty upon the owner or other person in possession and control of the premises to exercise due care to remedy the condition or otherwise protect the children from injury resulting from it. (*Wagner v. Kepler*, 411 Ill. 368.) The element of attraction is significant only in so far as it indicates that the trespass should be anticipated, the true basis of liability being the foreseeability of harm to the child." 5 Ill. 2d 614, 625, 126 N.E.2d 836, 842.

The elements of that exception are set forth in Restatement (Second) of Torts §339 (1965), as criterion by which a possessor of land becomes liable to trespassing children. The same elements have been incorporated in IPI Civil No. 120.04 (2d ed. 1971). That instruction is designated "Attractive Nuisance—Injury to Children" but the comments indicate the words "Attractive Nuisance" are used only as a "catch phrase" and recognize that the "attractive nuisance" doctrine was discarded in *Kahn*. The comments also indicate that since *Kahn* the appellate courts have "uniformly interpreted it to mean that a person must now use ordinary care to protect children from dangerous conditions whether created by defendant or found on his property [citations]."

■■ Count VI alleged the existence of the elements of the exception to the situation when an occupier owes no duty of ordinary care to persons coming on the land without invitation and then alleged that the defendant City was under a duty to exercise ordinary care to maintain its property in a reasonably safe condition but allowed a tree to remain so close to the street as to constitute a hazard, allowed shoots and sprouts to grow at the base of the tree to obstruct the view and maintained or allowed a row of trees so close to the street and each other as to obstruct the view. Thus the acts of negligence alleged in count VI and count II were substantially the

same. The allegations of the exceptions set forth in *Kahn* would have, if proved, placed a duty of ordinary care upon the defendant City even if plaintiff had not been an invitee. No contention was made at trial, however, that plaintiff was not an invitee to whom the City owed a duty of ordinary care. The allegation of count II presented to the jury a cause of action in which the City owed to plaintiff a duty to use due care to protect her from injury for any dangerous agency on the street or parking. That count was tried "under the customary rules of ordinary negligence cases." Plaintiff was not prejudiced by the dismissal of count VI and no error occurred.

All orders from which appeal are taken are affirmed except that the order dismissing count V to which defendant Ladonna Cummings is defendant is reversed. The case is remanded to the Circuit Court of McLean County with directions that count V be reinstated.

Affirmed in part, reversed in part and remanded.

CRAVEN, J., concurs.

Mr. JUSTICE WEBBER, concurring in part and dissenting in part:

I concur with the majority in upholding the dismissal of count VI against the City as being duplicitous of count II and I concur in their reasoning. However, I respectfully dissent from the reinstatement of count V against the mother.

This court in *Schenk* elected to view the doctrine of parental immunity in terms of duty rather than in terms of policy. This was followed by the *Heap* court, even though Mr. Justice English stated, "[T]he question is not one of the absence of a duty of reasonable care owed by a father to his son, but, rather, one of immunity from suit, based on public policy." 128 Ill. App. 2d 165, 167, 262 N.E.2d 826, 827.

Given the premise that the purpose of the policy is to avoid family strife, it is difficult, if not impossible, for me to comprehend how the strife is any less real because the injury happened on the public street rather than in the home on a stairway.

In a very real sense exceptions to the family immunity doctrine bear a direct relationship to the collateral source rule. How many suits of this nature would ever be brought in the first place in the absence of insurance? It makes no sense to me to defend to the death the collateral source rule on the one hand, and on the other, carve out exceptions *sub silentio* by permitting some intrafamily litigation under the guise of a general duty. If, as has frequently been said, modern jurors are sufficiently sophisticated to be reasonably sure of the existence of insurance in an ordinary lawsuit between strangers, they must be convinced beyond a shadow of a doubt of it when the suit is between

family members. This will only create another series of charades, of which the general public believes the bench and bar to be infinitely capable.

The foregoing may properly be considered nothing more than a personal, and somewhat archaic, viewpoint. At root, what is involved is my fundamental disagreement with the dictum found in *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531:

> "We do not feel that the announcement of this doctrine should be left to the legislature. The doctrine of parental immunity, as far as it goes, was created by the courts. It is especially for them to interpret and modify that doctrine to correspond with prevalent considerations of public policy and social needs."

My reasons for such disagreement are fully set forth in my dissent in *Kirk v. Financial Security Life Insurance Co.* (1977), 54 Ill. App. 3d 192, 369 N.E.2d 340.

Either the doctrine of parental immunity should be abolished altogether or left standing intact. The piecemeal approach, taken in this case and in *Schenk*, can lead to nothing but confusion.