Debra Lynn PEDIGO, an infant, by Carol L. Pedigo, her Guardian ad Litem, and Richard W. Mays and Lucille Mays, husband and wife, Plaintiffs,

v.

George D. ROWLEY, Cindy Lee Rowley, Debbie Good, State of Idaho, and County of Kootenai, State of Idaho, Defendants.

Cindy Lee ROWLEY and George D. Rowley, Third Party Plaintiffs and Appellants,

v.

Earl L. GARREN and Penney Garren, Third Party Defendants and Respondents.

No. 12937.

Supreme Court of Idaho.

May 6, 1980.

Samuel Eismann, Coeur d'Alene, for third party plaintiffs and appellants.

Phillip S. Oberrecht of Moffatt, Thomas, Barrett & Blanton, Boise, for third party defendants and respondents.

SHEPARD, Justice.

This is an appeal from a summary judgment in favor of third party defendants and respondents here, Garren. Debra Pedigo brought action against the Rowleys for personal injury and the Rowleys, in turn, sought to join Earl Garren, Debra's father, for contribution since he was allegedly negligent in failing to supervise properly Debra Pedigo. Garren moved for summary judgment on the theory that the doctrine of parental immunity barred any liability and the district court granted the motion for summary judgment. We affirm.

In late 1974, eleven year old Debra Pedigo was floating on an air mattress a short distance off the north shore of Lake Coeur d'Alene. She was struck by a speed boat operated by Cindy Rowley and owned by George Rowley. Pedigo sustained injuries which resulted in the amputation of one leg. Debra Pedigo had come to the lake with her father, who was sitting on the lake shore at the time of the accident. For purposes of summary judgment we assume that Earl Garren did not warn Debra Pedigo of the alleged dangers of floating on an air mattress in the lake.

The Rowleys asserted that Garren was negligent in his supervision of the activities of Debra Pedigo; Garren, therefore, was a joint tortfeasor and is, or could be, liable to the Rowleys for contribution in the event that Pedigo recovered a judgment against the Rowleys. The Garrens respond that any action by Pedigo against the Garrens was barred by the doctrine of parental immunity; hence, they could not be joint tortfeasors and no contribution could be sought from them by the Rowleys.

The doctrine of parental immunity is dispositive in this case and is a matter of first impression in Idaho. The doctrine was first articulated in *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891), wherein the court, citing no authority but relying exclusively on policy, declined to interject itself into the family relationship between a mother and minor daughter, stating:

> "The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand." 9 So. at 887.

That doctrine was adopted in a majority of jurisdictions. See Annot. 19 A.L.R.2d 423 (1951) and cases cited therein; Note, *The Demise of the Parent-Child Tort Immunity*, 12 Willamette L.J. 605 (1976).

Thereafter, courts began carving out exceptions to the doctrine. For example, courts have refused to apply the doctrine when the child is suing the parent's estate, e. g., *Dean v. Smith*, 106 N.H. 314, 211 A.2d 410 (1965); *Brennecke v. Kilpatrick*, 336 S.W.2d 68 (Mo.1960); a parent is acting in his business capacity, e. g., *Trevarton v.*

*Trevarton*, 151 Colo. 418, 378 P.2d 640 (1963); *Dunlap v. Dunlap*, 84 N.H. 352, 150 A. 905 (1930); a wilful or malicious tort is involved, *e. g., Emery v. Emery*, 45 Cal.2d 421, 289 P.2d 218 (1955); *Nudd v. Matsoukas*, 7 Ill.2d 608, 131 N.E.2d 525 (1956); the child is an emancipated minor, *e. g., Martinez v. Southern Pacific Co.*, 45 Cal.2d 244, 288 P.2d 868 (1955); or the dispute is contractual, *e. g., Robertson v. Robertson*, 229 So.2d 642 (Fla.App.1969).

Reasons that have traditionally been given as basis for the parental immunity doctrine have included: (1) the disruption of family tranquility and subsequent impairment of the foundations of American society, *see, e. g., Begley v. Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 254 A.2d 907 (1969); *Barlow v. Iblings*, 261 Iowa 713, 156 N.W.2d 105 (1968); *Skinner v. Whitley*, 281 N.C. 476, 189 S.E.2d 230 (1972); (2) the threat to parental discipline and control, *see, e. g., Begley v. Kohl & Madden Printing Ink Co., supra* ; *Barlow v. Iblings, supra* ; *Skinner v. Whitley, supra* ; (3) the proliferation of fraudulent and collusive suits between family adversaries, *see, e. g., Skinner v. Whitley, supra* ; and (4) the depletion of the family exchequer, *see, e. g., Orefice v. Albert*, 237 So.2d 142 (Fla.1970); *Skinner v. Whitley, supra. See also* J. Dooley, Modern Tort Law § 13.01 (1977); McCurdy, *Torts Between Parent and Child*, 5 Vill.L.Rev. 521 (1960); Note, *Parental Immunity* : *California's Answer*, 8 Idaho L.Rev. 179 (1971); Note, *The Demise of Parent-Child Tort Immunity*, 12 Willamette L.J. 605 (1976).

These policy arguments, however, have been rebutted by other courts. For example, some courts believe that the public interest in protecting society's members from losses caused by another's negligence outweighs the possibility of family discord. *See, e. g., Streenz v. Streenz*, 106 Ariz. 86, 471 P.2d 282 (Ariz.1970). Additionally, the prevalence of insurance shifts the controversy to a third party, thereby avoiding family conflict. *E. g., Streenz v. Streenz, supra* ; *Gelbman v. Gelbman*, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (N.Y. 1969). Regarding the fraud or collusion

argument, its mere possibility is too tenuous to serve as a basis to bar all parent-child tort suits. *E. g., Williams v. Williams*, 369 A.2d 669 (Del.1976). As in any other tort action, judges and juries can be relied upon to ferret out fraudulent and collusive claims. *Streenz v. Streenz, supra* ; *Williams v. Williams, supra* ; *Gelbman v. Gelbman, supra*. It is also argued that the impact of the lawsuit on the family exchequer is diminished, if not completely eliminated, by the presence of insurance. *Hebel v. Hebel*, 435 P.2d 8 (Alaska 1967). Even if the family exchequer argument is valid, it nevertheless ignores the question of compensation for the injuries of the child. *See, e. g., Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966). Finally, some courts have noted that their previous elimination of interspousal immunity destroys the validity of arguments against parent-child immunity. *Hebel v. Hebel, supra* ; *Gibson v. Gibson*, 3 Cal.3d 914, 479 P.2d 648 (1971); *France v. A.P.A. Transport Corp.*, 56 N.J. 500, 267 A.2d 490 (1970); *see Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 23, 539 P.2d 566, 575 (1975) (Shepard, J., dissenting).

Courts that have recently addressed this issue have dealt with parental immunity in one of four different ways. First, Wisconsin eliminated the doctrine except in two situations. Second, California replaced parental immunity with a reasonable parent standard. Other courts have eliminated the doctrine completely. Finally, some jurisdictions still retain parental immunity.

Wisconsin was the first jurisdiction to abrogate the parental immunity doctrine. *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963). Wisconsin, however, retained parental immunity in the narrowly defined situations when the alleged negligence involved parental authority or parental discretion regarding "food, clothing, housing, medical and dental services, and other care." *Id.* at 198. A later Wisconsin case has made it clear that other "care" does not encompass ordinary discretion in day-to-day affairs. *Thoreson v. Milwaukee & Suburban Transp. Co.*, 56 Wis.2d 231, 201 N.W.2d 745 (1972). According to this view, in order

to be immune from suit a parent must show that the alleged negligence falls within one of the two exempt categories. That requirement may lead to arbitrary distinctions. *See Gibson v. Gibson, supra*; *compare Lemmen v. Servais*, 39 Wis.2d 75, 158 N.W.2d 341 (1968) (failure to warn a child to watch for traffic was within parental discretion and immune under *Goller*) *with Cole v. Sears, Roebuck & Co.*, 47 Wis.2d 629, 177 N.W.2d 866 (Wis.1970) (allowing a two year old child to play on a swing set was not within the *Goller* immunity).

Other jurisdictions have followed the Wisconsin rationale. *See, e. g., Rigdon v. Rigdon*, 465 S.W.2d 921 (Ky.1971); *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972); *Silesky v. Kelman*, 281 Minn. 431, 161 N.W.2d 631 (1968); *Gross v. Sears, Roebuck & Co.*, 158 N.J.Super. 442, 386 A.2d 442 (1978). Illinois has also limited the application of the doctrine of parental immunity, but rather than enumerating the exceptions as Wisconsin did in *Goller v. White, supra*, Illinois looks to whether the conduct arises out of the family relationship and is directly connected with family purposes. If so, the parent continues to be immune. *Cummings v. Jackson*, 57 Ill.App.3d 68, 14 Ill.Dec. 848, 372 N.E.2d 1127 (1978); *Schenk v. Schenk*, 100 Ill.App.2d 199, 241 N.E.2d 12 (1968).

The California Supreme Court, however, rejected the Wisconsin approach, because it would theoretically allow a parent an unequivocal right to act negligently toward a child in certain specified instances. Instead, California requires a parent to act as a reasonable parent regardless of the type of conduct involved. *Gibson v. Gibson, supra.* The California approach assumes that a common set of standards independent of already existing criminal sanctions applies to all parent-child relationships. The reasonable parent standard, however, has been criticized because of the impossibility of applying a uniform standard across economic, educational, cultural, religious and ethnic backgrounds, *Holodook v. Spencer*, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974). To apply the reasonable parent standard "would be to circumscribe the wide range of discretion a parent ought to have in permitting his child to undertake responsibility and gain independence." 364 N.Y.S.2d at 871, 324 N.E.2d at 346.

A small minority of jurisdictions have eliminated the doctrine of parental immunity entirely. *Petersen v. City and County of Honolulu*, 51 Haw. 484, 462 P.2d 1007 (1970); *Briere v. Briere, supra*; *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974).

Some jurisdictions have eliminated the doctrine of parental immunity in the context of automobile accidents. *E. g., Hebel v. Hebel, supra*; *Sorenson v. Sorenson*, 369 Mass. 350, 339 N.E.2d 907 (1975); *France v. A.P.A. Transp. Corp., supra*; *Lee v. Comer*, 224 S.E.2d 721 (W.Va.1976). But many of those jurisdictions expressly limit their holdings to the individual facts of those particular cases. However, New Hampshire, in *Briere v. Briere, supra*, completely eliminated the doctrine of parental immunity in broad sweeping language in a case involving an automobile accident. Two jurisdictions have expressly refused to extend the analogy of automobile circumstance cases to other cases involving parental discretion. *Compare Williams v. Williams*, 369 A.2d 669 (Del.1976) *and Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971) *with Schneider v. Coe*, 405 A.2d 682 (Del.1979) *and Wright v. Wright*, 213 Va. 177, 191 S.E.2d 223 (1972). In New York, the doctrine of parental immunity was judicially eliminated in the context of an automobile suit, *Gelbman v. Gelbman, supra*, but the impact of that decision was narrowed in *Holodook v. Spencer, supra*. In *Holodook*, the Court held that a parent's negligent failure to supervise a child is not a tort since a parent owes the child no legal duty to supervise beyond the minimal standards imposed by the criminal statutes:

On the other hand, notwithstanding the abolition or curtailment of parental immunity in some states, other jurisdictions continue to uphold the doctrine. *Ooms v. Ooms*, 164 Conn. 48, 316 A.2d 783 (1972) (reaffirming parental immunity except where statutorily abolished in automobile accidents); *Barlow v. Iblings*, 261 Iowa 713,

156 N.W.2d 105 (1968) (injuries to child on father's business premises); *Downs v. Poulin*, 216 A.2d 29 (Me.1966) (attempt to sue estate of mother for injuries incurred in automobile accident); *Montz v. Mendaloff*, 40 Md.App. 220, 388 A.2d 568 (1978), *Skinner v. Whitley*, 281 N.C. 476, 189 S.E.2d 230 (1972) (parental immunity affirmed in automobile accident cases); *see State Farm Mut. Auto. Ins. Co. v. Leary*, 168 Mont. 482, 544 P.2d 444 (1975). These courts hold that any changed conditions in society that may have occurred since the enunciation of the parental immunity doctrine in *Hewellette* are merely superficial and do not warrant a change of policy.

We come then, finally, to the adoption of a policy regarding the continuation of parental immunity doctrine in Idaho. We believe that the integrity of the family plays an essential role in the welfare of our society. To that extent, we agree with those jurisdictions which still retain the doctrine of parental immunity. We reject the California notion that all parent-child relationships may be judicially supervised by a "reasonable parent" standard. The people of Idaho are too diverse and independent to be judged by a common standard in such a delicate area as the parent-child relationship. Our legislature has established certain standards of parental conduct in the area of physical abuse or neglect; a parent who violates those standards risks criminal sanction or the removal of the child. Short of such acts, our judiciary cannot order a "reasonable" parent standard. Our geography, our population, and most importantly, the diversity in our religious, ethnic and cultural backgrounds make a common standard inapplicable.

All of us, as parents, have hopes for our children. All of us want our children to grow safely into adulthood, but most of us also realize that children cannot mature in a vacuum. To become responsible adults, children must learn to assume responsibility and make judgments. This is a process and not an instantaneous miracle that automatically occurs at age eighteen, nineteen, or twenty-one. In the area of supervision, what one parent may perceive as too dangerous or unnecessary may be thought by another parent as desirable for the formation of growth abilities. To suggest that a child should be able to sue its parent in such circumstances and that a jury should judge the parent on the basis of some common standard is, we believe, nothing short of impossible. For example, how could the same standard apply to both the suburban parent of Boise and the rural parent of St. Maries?

We are unwilling to adopt a categorical rule that universally prohibits parent-child actions on the basis of a total and absolute parental immunity. It is enough to say in the instant case, involving the relatively narrow area of parental immunity for *alleged negligent supervision*, no cause of action exists beyond that specified by our existing legislatively imposed sanctions.

There can be little argument but that the parental immunity of Mr. Garren from suit brought by his daughter Pedigo also bars third parties who are tortfeasors from seeking contribution. *Myers v. J. A. McCarthy, Inc.*, 428 F.Supp. 656 (E.D.Pa. 1977); *Rigsby v. Tyre*, 380 A.2d 1371 (Del. Super.1977); *American Medicorp, Inc. v. Lord*, 578 S.W.2d 837 (Tex.Civ.App.1979); *see, e. g., Schneider v. Coe, supra* ; *Holodook v. Spencer, supra* ; Annot., 19 A.L. R.2d 1003 (1951). Although appellants argue that exceptions to such general rule have arisen, *see Perchell v. District of Columbia*, 444 F.2d 997 (D.C.Cir.1971); *Restifo v. McDonald*, 426 Pa. 5, 230 A.2d 199 (1966), we decline to adopt the rationale of those cases. Allowing third parties to recover from immune parents

"would permit the nonparent defendant, who would more likely be insured, to effectively reduce the child's compensation by means of a * * * apportionment with the negligent parent. It is artificial to separate the parent and child as economic entities by the assertion that the recovery of the nonparent defendant from the negligent parent does not technically diminish the injured child's recov-

ery. The reality of the family is that, except in cases of great wealth, it is a single economic unit and recovery by a third party against the parent, ultimately diminishes the value of the child's recovery. Even if scrupulous care were taken to see that the parent's * * * contribution did not come out of the child's recovery * * *, there would still be a strain on the family relationship, a result which our courts have consistently sought to avoid." *Holodook v. Spencer*, 364 N.Y. S.2d at 868–869, 324 N.E.2d at 344.

We agree with the *Holodook* statement.

The summary judgment of the district court is affirmed. Costs to respondents.

DONALDSON, C. J., and McFADDEN and BISTLINE, JJ., concur.

DONALDSON, Chief Justice, specially concurring.

It is appropriate to add a word in response to the view tendered in Part I of the dissenting opinion. It is there implied that, unless it can be shown that the reasons advanced in support of parental immunity are significantly different from those advanced in support of interspousal immunity, "we should be consistent, follow our decision in *Yellowstone*, and reject the doctrine of parental immunity."

The relationship of parent and child is simply not the same as that of husband and wife, a distinction the dissent ignores. While some of the bases for interspousal and parental immunity doubtless overlap, the doctrine of parental immunity is mandated by at least one fundamental policy which is wholly independent of those offered in support of interspousal immunity. Our society has traditionally entrusted to parents the delicate process of rearing and training children, and it is not the province of courts to second-guess the daily workings of that process.

In the spousal relationship, there is no comparable process of rearing and training.

Although we might safely assume that sometime during the course of any marriage, each spouse may well attempt to "train" the other in one or more particulars, perhaps even successfully, the principles involved are simply not the same.

In sum, our recognition today of a narrow parental immunity in a case involving alleged passive negligence in the supervision of a child, is not inconsistent with our prior rejection of the doctrine of interspousal immunity in a case which involved active negligence in the operation of an automobile.

McFADDEN, J., concurs.

BAKES, Justice, dissenting:

It isn't entirely clear whether the majority is disposing of this case on the basis that parental immunity precludes the joining of the parent Garren in the third party complaint for contribution, or whether the majority is concluding that Garren has not committed any actionable tort.[1] If it were the latter, I would be inclined to concur were it not for the fact that that issue was not raised below or on appeal. It would therefore be unfair to the parties to decide the case on that legal basis at this stage of the proceedings. However, on the assumption that the majority opinion disposes of the appeal on the ground that "[t]he doctrine of parental immunity is dispositive in this case," *ante* at 561, and that because of that immunity no third party complaint for contribution can be brought against the parent Garren, I am inclined to dissent.

I

I do not believe that the majority's adoption of the doctrine of parental immunity in this case can be reconciled with this Court's abrogation of interspousal immunity in *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1974). In my mind, the paramount rationale traditionally advanced in support of both parental and interspousal immunity has been the preserva-

1. This problem is caused primarily by the majority's extensive reliance on *Holodook v. Spencer*, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974), a case in which the court held that a parent's failure to supervise a child is not a legally cognizable tort.

tion of the family unit. Since that argument was previously rejected by a majority of this Court, we should be consistent, follow our decision in *Yellowstone*, and reject the doctrine of parental immunity. As Justice Shepard observed in his *Yellowstone* dissent, courts which have abolished interspousal immunity "have subsequently and logically been required to abolish the immunity between parent and child for negligent torts." *Id.* at 23, 539 P.2d at 575 (Shepard, J., dissenting).

In the case at bar, Justice Shepard, now speaking for the majority, asserts that it would be difficult, if not impossible, for this Court to establish a standard of care to be applied by the finder of fact in determining whether a parent was negligent in supervising his child. Not surprisingly, this same argument was advanced by Justice Shepard in his *Yellowstone* dissent, but was apparently found to be unpersuasive by the majority in that case. The reappearance of a dissenting rationale in this majority opinion will no doubt cause confusion in the trial courts with respect to the continuing vitality of the *Yellowstone* rule. I, too, dissented in *Yellowstone*, and for some of the same reasons set forth by Justice Shepard in his dissent. I still do not favor the abrogation of any type of interfamilial immunity. However, for the sake of consistency, we should adhere to the rationale expressed in *Yellowstone*.

## II

Furthermore, it is one thing to cloak a family member with immunity when he is being sued directly by another family member, as was the case in *Yellowstone*. It is quite another matter to invoke the doctrine against a third party as the Court is doing here.[2] In 1971, our legislature enacted I.C. § 6–803, the "Contribution Among Joint Tortfeasors" statute. That statute specifically provides that a defendant in a tort action can bring a claim for contribution.

The majority opinion has, in effect, given precedence to the 1891 decision of the Mississippi Supreme Court in *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891), which apparently started this common law doctrine, over a 1971 pronouncement of the Idaho legislature.

The Supreme Court of Florida has recently faced this same issue in *Shor v. Paoli*, 353 So.2d 825 (Fla.1977). The court held that, notwithstanding the fact that a spouse is immune to direct action by the other spouse, a third party tortfeasor can sue to obtain contribution from the negligent spouse. The Florida court adopted the following rationale in support of its decision:

" 'The doctrine of family or interspousal immunity is based on the desirability of the preservation of the family unit. The law of contribution of joint tortfeasors is meant to apportion the responsibility to pay innocent injured third parties between or among those causing the injury.

" 'In the case at bar it was determined that both Paoli [the original defendant] and Shor [the negligent wife] caused the injury. Shor's husband collected 100% of his damages from Paoli. To say that Shor doesn't have to contribute and account for her wrongdoing would be unfair to Paoli and a windfall to Shor. This is not a case where the husband sued the wife on account of her negligence so we are not doing any real damage to the doctrine. This is a case where the joint tortfeasor sued the joint tortfeasor and we are ruling in support of [the contribution] statute.' " *Id.* at 826.

Since we are ruling today for the first time on the issue of parental immunity, the joint tortfeasors contribution statute adopted by the 1971 Idaho legislature should take precedence over any common law doctrine which immunizes the parent from the consequences of his tort.

---

**2.** It should be noted that one of the traditional arguments advanced in favor of the doctrine disappears when a third party is involved. Some courts feel that permitting children to sue their parents places a strain on the family relationship. In a case such as the one at bar, however, it will ordinarily be in the best interests of both parent and child to place the blame on the third party rather than each other.

The inequity possible under the holding of the majority in this case is immediately evident. If the third party is minimally negligent—for example, 10%—and the immune parent is primarily at fault—for example, 90%—the third party will, according to the majority, be saddled with the entire judgment while the seemingly culpable parent bears no loss whatsoever. If the parent and the child are truly one economic unit, as the majority approvingly asserts by its quotation from the *Holodook* case, the parent profits by his own wrongdoing.

This inequity has spawned an analogous line of authority in worker's compensation cases. Numerous state courts have permitted third party tortfeasors to recover over against the statutorily immune employer in either contribution or indemnity, notwithstanding statutory exclusivity provisions explicitly limiting the employer's exposure. *E. g., Sunspan Eng'r & Constr. Co. v. Spring-Lock Scaffolding Co.*, 310 So.2d 4 (Fla.1973); *Lambertson v. Cincinnati Corp.*, 257 N.W.2d 679 (Minn.1977); *Carlson v. Smogard*, 298 Minn. 362, 215 N.W.2d 615 (1974); *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); *United States Fidelity & Guaranty Co. v. Kaiser Gypsum Co., Inc.*, 273 Or. 162, 539 P.2d 1065 (1975). *See generally* 2A Larson's Workmen's Compensation Law, § 76 (1974) ("Third Party's Action Over Against Negligent Employer"). These authorities recognize the basic inequity observed by the Florida Supreme Court in *Shor v. Paoli, supra, i. e.*, that to immunize the exempt party from a third party complaint either provides a windfall to the exempt party or saddles the third party with liability only distantly related to its relative fault.

### III

Finally, when this case goes to trial, the appellants should not be precluded from including the parent Garren's comparative negligence in the special verdict, notwithstanding the fact that, as a result of the majority opinion, he will not be a party to the action. Non-parties can be included in the general apportionment of comparative fault. *Connar v. West Shore Equipment of Milwaukee, Inc.*, 68 Wis.2d 42, 227 N.W.2d 660 (1975); *Lines v. Ryan*, 272 N.W.2d 896 (Minn.1978); Heft & Heft, Comparative Negligence Manual, § 8.131 (1978). *See Tucker v. Union Oil Co. of California*, 100 Idaho 590, 603 P.2d 156 (1979); *Jensen v. Shank*, 99 Idaho 565, 585 P.2d 1276 (1978). Even though an actor in the controversy may be immune from liability, his comparative causative negligence should nonetheless be included in the jury's apportionment. The party defendant will then have the opportunity to place the blame on the non-party actor. Only by including the non-party in the apportionment will the jury's special verdict represent a true and accurate picture of the relative fault of *all* the actors contributing to the injury.