555 P.2d 144

Martin ANDERSON and Bernice Boyer,
Plaintiffs-Appellants,

v.

George GAILEY, Defendant-Respondent.

No. 11902.

Supreme Court of Idaho.

Oct. 8, 1976.

James Annest, of Annest & Anderson, Burley, for plaintiffs-appellants.

Robert C. Paine, of Parry, Robertson, Daly & Larson, Twin Falls, for defendant-respondent.

BAKES, Justice.

This is a wrongful death action brought by the plaintiff appellants Martin Anderson and Bernice Boyer in which they alleged that their son, the decedent Richard Anderson, died as a result of the reckless and negligent conduct of the defendant respondent George Gailey. It was uncontested that Richard Anderson died while he was in a 285-foot deep drill shaft that Gailey was digging as an irrigation well and that Gailey had engaged Anderson to descend into the drill shaft to make repairs to Gailey's broken equipment at the bottom of the shaft. The trial centered upon three principal sets of issues: (1) the jurisdictional question of whether Anderson's working agreement with Gailey was within the scope of the Workmen's Compensation Act, which determined whether the plaintiffs could bring this wrongful death action in a court rather than present a workmen's compensation claim before the Industrial

Commission, (2) the questions under tort law of what duty Gailey owed Anderson and whether he had breached that duty to Anderson and thereby contributed to Anderson's death, and (3) whether Anderson had negligently contributed to his own death or had assumed the risk involved. The jury returned a general verdict denying recovery, and the court entered judgment on the verdict. The plaintiffs appealed. Because we hold that the jury was improperly instructed concerning the duty of care that Gailey owed Anderson and because the special verdict form does not indicate whether the jury's verdict was a result of their resolution of the jurisdictional question adversely to the plaintiffs or whether the misinstruction upon the matter of duty of care might have contributed to the verdict, we must reverse and remand for new trial.

## THE EVIDENCE INTRODUCED AT TRIAL.

The evidence introduced at trial upon the matters described in this and the following paragraph was uncontradicted. Gailey, who was in the well drilling business, had begun drilling the hole in question in February of 1973. Because he was drilling through extremely hard rock below the 60-foot level, he had found it necessary to dynamite the hole every 2½ to 3 feet in order to drill. On April 5 of that year, the day after he had last dynamited in the hole, he had broken his drill bit at approximately the 285-foot level. Gailey was unable to "fish" the broken drill bit from the hole and decided that it would be necessary to send someone into the hole to repair the bit so that it could be removed and he could continue drilling. In the last week of April, Gailey first attempted to repair the bit by lowering someone into the hole to weld it. Victor Chittock, the man who agreed to attempt the repair, was lowered to approximately the 110-foot level of the hole, but complained that he was unable to breathe and that he smelled fumes and de-

manded to be raised. Chittock had neither made nor attempted any repairs.

Gailey then left word with a number of people that he was looking for someone else to attempt the repairs. A common acquaintance told Anderson about the situation, apparently because he believed Anderson might be interested in attempting the repair for the $200 Gailey had offered. Richard Anderson agreed to attempt to repair the drill bit after discussing the matter with Gailey. Between that time and May 5, the day he was lowered into the hole, Anderson selected breathing apparatus to take with him when he entered the hole. Sometime during the late morning or early afternoon hours of May 5, Richard Anderson descended into the hole. He was lowered upon a "bucket" which gave him a flat surface to stand upon and which was raised or lowered by machinery operated by George Gailey. He wore no shoulder harness or other apparatus connected to a line to the surface that would allow him to be raised from the hole in the event the "bucket" could not be raised to the surface.

According to Gailey's testimony, Anderson had told him that in the Navy he had become familiar with air equipment and had learned to work in confined areas. The welding supplier who furnished Anderson's air mask testified that Anderson had told him the repairs would present "no problem" because he had had similar experience in the Navy and knew what he was doing. The supplier also testified that Anderson told him he would turn his breathing apparatus on when he encountered foul air, but the supplier had warned him that then it would be too late. On the other hand, the plaintiff Martin Anderson, Richard's father, testified that as far as he knew Richard had never had any welding training and had never worked with air tanks in the Navy or anywhere else.

There were only three people at the site when Anderson entered the hole—Anderson, Gailey and Larry Martin, one of Gail-

ey's employees. In their testimony at trial, Gailey and Martin gave the following account of what happened when Anderson attempted to make the repair. Before Anderson entered the hole they had asked him to check his breathing equipment, which he did, and he had turned on the air tank and indicated that it was working. Gailey had offered to rig a shoulder harness by which Anderson could be raised and lowered independently of the bucket, but Anderson had declined, saying that he would not be able to weld with his arm and shoulder movements restrained by a harness. Gailey operated the well drilling equipment that lowered Anderson into the hole while Martin stood above the hole and maintained contact with Anderson by walkie-talkie. Martin spoke to Anderson while Anderson was roughly halfway to the bottom and again when Anderson reached the bottom of the hole. When Anderson reached the bottom, he told Martin he would not talk again until he had completed welding the broken bit. Shortly thereafter there were two flashes of light from the hole, then silence and no further activity.

The rescue attempt to raise Anderson from the hole was not completed until the early morning hours of the following day. The persons involved in the rescue operation gave the following account. Gailey had been unable to raise the bucket from the hole when he initially attempted to do so, apparently because it had become wedged in the shaft. Victor Chittock was twice lowered into the hole in an attempt to free Anderson, and in his second descent was lowered to approximately the 190- or 200-foot level. From there he was unable to tell whether Anderson was still alive. He had difficulty breathing and asked to be raised, but lost consciousness at approximately the 60-foot level as he was being pulled to the surface.

After that, a hose from an air compressor was lowered to the bottom of the well and the hole was thoroughly ventilated by air blown by the compressor. The rescuers then lowered Roland Etter to a depth in the hole a few feet above Anderson. Etter could not tell whether Anderson was alive or dead, but saw that the "bucket" upon which Anderson was resting was wedged into the uneven surface of the side of the hole and decided that in the constricted working area he would be unable to loosen it. After Etter told the rescuers what he had seen, they decided to continue the effort to raise the bucket to bring Anderson to the surface. The well drilling equipment encountered considerable difficulty in raising the bucket and Anderson's body to the surface, stalling out and dying half a dozen times, apparently because the bucket or Anderson's body was catching upon the rough surfaces of the shaft and placing considerable strain upon the mechanism.

When the bucket reached the surface, a sheriff's deputy detached the air tank that Anderson had taken with him into the hole to determine whether there was air in it. The deputy testified that the tank's valve was closed when he removed it, but when he opened the valve to test the air pressure inside the tank the force of the escaping air ruptured the hose connected to the tank.

By the time his body was raised from the hole, at least twelve hours and possibly as many as sixteen hours after he had entered it, Anderson was dead. There was no immediate autopsy, but the body was first taken to a mortuary to be embalmed. The mortician took a blood sample which was later analyzed and found to have a carbon monoxide level of 22%. Anderson's body was also bruised, apparently from contact with the wall when he was raised.

In addition to the evidence already described, there was evidence upon the commonness or rarity of sending a person into a drilling hole to repair broken drilling equipment; there was evidence upon the question of whether it was Anderson or Gailey who exercised practical control over the selection of the equipment to be used in the attempt to repair the drill bit and of

the manner in which Anderson would attempt to repair the drill bit; there was evidence introduced upon the care Gailey exercised toward Anderson before Anderson was lowered into the hole, while Anderson was in the hole, and during the rescue attempt, and of the care Anderson took to protect himself; there was evidence introduced upon the likelihood that dangerous fumes from the dynamiting would have lingered in the hole for a month; there was evidence introduced upon the safety of the welding equipment Anderson was using and upon the likelihood of his electrocution while using it or his asphyxiation if he used that equipment in a confined space and did not have an independent source of oxygen; and there was evidence upon the question of whether the likely cause of Anderson's death was by asphyxiation or by electrocution or from battering against the sidewalls of the drill hole when he was being raised to the surface.

## THE JURISDICTIONAL ISSUE

Based upon the evidence introduced at trial and the reasonable inferences which a jury could draw from that evidence, we conclude that had the jury resolved the jurisdictional issue by special verdict either for or against the plaintiffs that the record would support the verdict and that verdict would be binding upon us on appeal. Thus, the submission of the jurisdictional issue to the jury was not in error and the jury's decision upon the question cannot be the basis for reversal. However, because, as we shall explain below, the jury was incompletely instructed concerning the standard of care that Gailey owed to Anderson, and because if the jury had been properly instructed upon the standard of care there was sufficient evidence in the record upon which a jury verdict finding that the plaintiffs were entitled to recovery against Gailey could be upheld, we must remand the case for a new trial because the incomplete instructions prejudiced the plaintiffs' rights. *See,*

*e.g., Taylor v. K.T.V.B., Inc.,* 96 Idaho 202, 525 P.2d 984 (1974).

The jurisdictional question to be decided in this appeal is whether the trial court had jurisdiction to consider this action in tort or whether the plaintiffs' exclusive remedy and Gailey's exclusive liability was before the Industrial Commission under the Workmen's Compensation Law, I.C. §§ 72–101–928. Whenever an employee is injured or killed in the course of an employer-employee relationship within the coverage of the Workmen's Compensation Law, the injury or death ordinarily gives rise to no cause of action in tort regardless of the fault of the employer, I.C. § 72–201. The employer's liability for the injury or death is under the Workmen's Compensation Law, I.C. § 72–209, and the remedy of the employee or his dependent or next of kin is under the Workmen's Compensation Law, I.C. § 72–211. Although the plaintiffs conceded that their son died while attempting to repair George Gailey's equipment, they contended that Richard Anderson's working relationship with George Gailey did not fall within the coverage of the Workmen's Compensation Law and thus that the Workmen's Compensation Act did not preclude them from bringing this action in tort. In accordance with this contention, the trial court instructed the jury to consider whether Anderson fell within either of the two following working relations which are outside the Act's coverage: (1) the injured party was an independent contractor, or (2) the injured party was engaged in casual employment.

The term "independent contractor" is defined by I.C. § 72–102(13) as "any person who renders service for a specified recompense for a specified result, under the right to control or actual control of his principal as to the result of his work only and not as to the means by which such result is accomplished." The independent contractor is contrasted with the "em-

ployee," who is defined by subsection (9) of that section as "any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer." Independent contractors are outside of the coverage of the Workmen's Compensation Law while employees are ordinarily within it. *Smith v. Sindt*, 89 Idaho 409, 405 P.2d 959 (1965); *E. T. Chapin Co. v. Scott*, 44 Idaho 566, 260 P. 172 (1927). The determination of whether an injured party is an independent contractor or an employee is a factual determination which must be made from all of the circumstances surrounding the contractual relation, *Wilcox v. Swing*, 71 Idaho 301, 230 P.2d 995 (1951), and "no one test standing alone, except the right of control . . ." of the independent contractor or employee, can determine whether a person is an employee or an independent contractor, *Beutler v. MacGregor Triangle Co.*, 85 Idaho 415, 421, 380 P.2d 1, 4 (1963).

■■■ I.C. § 72–212(2) provides that casual employment is not covered by the provisions of the Workmen's Compensation Law unless the employer has elected to the contrary, as provided by I.C. § 72–213. Casual employment is not defined by the Act, but this Court has construed the term to mean,

> "[A]n employment that arises occasionally or incidentally or which comes at uncertain times or at irregular intervals, for a limited or temporary purpose and whose happening cannot be reasonably anticipated as certain or likely to occur or to become necessary or desirable and which is not a usual concomitant of the business, trade or profession of the employer. *Flynn v. Carson*, 42 Idaho 141, 243 P. 818 [1926]." *Vogl v. Smythe*, 74 Idaho 115, 118, 258 P.2d 355, 356 (1953).

Thus, even though a person is an employee rather than an independent contractor, if he is a casual employee he is not ordinarily within the coverage of the Workmen's Compensation Law.

■■■ Based upon these definitions of independent contractor and casual employment, our review of the record shows that there was sufficient evidence to submit to the jury the issue of whether Richard Anderson was a non-casual employee of George Gailey rather than an independent contractor or a casual employee of George Gailey. The plaintiffs argue, however, that the question of whether their son was a non-casual employee, i.e., the question of whether the remedy for his death was solely under the Workmen's Compensation Law, had been removed from the case when the district court denied the defendant's motions to dismiss and for summary judgment, both of which were made upon the ground that the court had no jurisdiction to hear the plaintiffs' claim because the Industrial Commission had exclusive jurisdiction of the matter. The plaintiffs misunderstand the significance of the denial of the motion to dismiss under I.R.C.P. 12(b)(1) and the motion for summary judgment under I.R.C.P. 56. In denying these motions the court did not rule as a matter of law that it and not the Industrial Commission had jurisdiction to hear this matter. Its ruling was only that Gailey had not shown by the pleadings or by the pleadings and affidavits that he was entitled to judgment as a matter of law or that there was no genuine issue of material fact to be resolved by further proceedings. Because the question of jurisdiction depended upon the resolution of a contested factual issue, the court had to defer its decision upon that question until the resolution of the factual issue by the jury; then it could determine whether it had jurisdiction to consider the matter. Thus, the trial court's rulings denying the motions did not remove the question of the applicability of workmen's compensation law from the proceedings and the trial court did not err in carrying these issues forward to trial.

■■■ There is another question, however, which arises concerning the resolution of the jurisdictional issue. Although

factual questions are normally left for the jury in jury trials, there have been cases from other states holding that the jurisdictional question whether a plaintiff is within or without the scope of workmen's compensation coverage must be decided by the trial judge rather than the jury. *E.g., Morgan v. Hays*, 102 Ariz. 150, 426 P.2d 647, cert. denied, 389 U.S. 859, 88 S.Ct. 105, 19 L.Ed.2d 125 (1967); *Cornelison v. Seabold*, 254 Or. 401, 460 P.2d 1009 (1969). However, it appears that the weight of authority in the western states is to submit questions of fact determining the applicability of workmen's compensation laws to the trier of fact. *E.g., Miller v. Long Beach Oil Development Co.*, 167 Cal.App. 2d 546, 334 P.2d 695 (1959); *J & K Construction Co. v. Molton*, 154 Colo. 214, 390 P.2d 68 (1964); *Addison v. Tessier*, 62 N. M. 120, 305 P.2d 1067 (1957); *Southwestern Bell Telephone Co. v. Ward*, 200 Okl. 315, 193 P.2d 569 (1948). No cases have been cited to us in which Idaho has squarely faced this question. In our opinion, the better rule and the rule we adopt, is to submit these questions to a jury. To do otherwise in this case is to invade the province of the jury. The jury's determination of whether the decedent was an independent contractor or an employee not only bears upon the issue of the court's jurisdiction; it also bears upon the standard of care that Gailey owed to the decedent under the common law of tort. Thus, it is the type of factual question traditionally given to the jury in a jury trial, and it was proper to submit this issue to the jury. Idaho Constitution, Art. 1, § 7.

■ However, even though this issue was submitted to the jury and the jury was instructed that if it found that Richard Anderson's working relationship with George Gailey was covered by the Workmen's Compensation Law, then it should return a verdict for the defendant, the special verdict form had no line or box to check to show that the verdict was on jurisdictional rather than tort grounds. The only questions the jury was asked to answer on the special verdict form were those pertaining to negligence of the decedent or the defendant and the amount of the plaintiffs' damages. The jury was not instructed to check the line showing that George Gailey was not negligent in order to show that it had found for Gailey on jurisdictional grounds, but that was the only way it could have shown such a finding. The jury did check the line showing that Gailey had not negligently caused Anderson's death, but we cannot tell whether this was a jurisdictional or a tort finding. The special verdict forms should have asked the jurisdictional questions in addition to the tort questions and provided separate lines for resolving the jurisdictional question apart from the tort question, and upon retrial if the juridiction issue is again submitted to the jury, an appropriate special verdict form should be read and submitted to the jury.

## THE TORT AND EVIDENCE ISSUES

■ After reviewing the evidence introduced at this trial, we are of the opinion that had the jury been submitted a special verdict to determine whether the decedent Richard Anderson was a casual employee, an independent contractor, or a regular employee of Gailey, there was evidence in the record which would support a finding in any one of these three categories. If the jury had found Richard Anderson to be an independent contractor or an employee of Gailey engaged in casual employment, then the court would have had jurisdiction to hear this action. For that reason, it was necessary to instruct the jury both upon the duty of care that an independent contractee owes to an independent contractor and the duty of care that an employer (master) owes to his employee (servant). While the trial court did instruct the jury regarding the duty owed to a contractee in an independent contractual relationship, no instructions on the duty of care owed in an employee-employer relationship, albeit a casual one, were given, although the plaintiff had requested such

instructions. Had the jury concluded that the plaintiffs' decedent had been a casual employee, there was no standard of care given to the jury by way of instruction to guide the jury in determining whether the employer was negligent. The failure to include any instructions setting forth the duty of care an employer (master) has to protect the health and life of his employee (servant) was prejudicial error. Upon remand and a new trial the trial court must instruct the jury not only upon the duty of care an independent contractee owes to an independent contractor, but also upon the duty of care that an employer (master) owes to a casual employee (servant).

■ The plaintiffs, however, have not merely assigned as error the trial court's failure to include instructions upon the duty of care an employer (master) owes to his employee (servant); they have also assigned as error all of the instructions the trial court gave setting forth the duty of care an independent contractee owes to an independent contractor. It was not error for the trial court to instruct upon this duty. The evidence could support a finding by the jury that the decedent Richard Anderson was an independent contractor, and thus the trial court was correct in instructing the jury upon this question. The plaintiffs draw particular attention, however, to instruction number 12, arguing that it was prejudicial error. That instruction says:

"Where an independent contractor supplies his own instrumentalities for doing the work agreed on, the contractee owes no duty to him to use care to see that such instrumentalities are not defective.

"Thus, in this case, if you find that Richard Anderson supplied his own air equipment, you are instructed that the defendant George Gailey had no duty of care to see that such equipment was not defective." Rptr.Tr., Vol. 2, p. 493.

The plaintiffs argue that this instruction impliedly said that Richard Anderson was an independent contractor because the second paragraph did not say that if the jury found that Richard Anderson was an independent contractor who supplied his own air equipment, then George Gailey had no duty of care to see that the air equipment was not defective, but merely said that George Gailey had no duty of care to see that the equipment was not defective if Richard Anderson supplied his own air equipment. It is arguable that this instruction had some potential for misleading the jury to think that the trial court was instructing them that Richard Anderson was an independent contractor, so if this instruction is requested upon remand the trial court should modify it to clarify its meaning.

■ The plaintiffs also argue that the trial court erred by instructing the jury that the plaintiffs, as heirs of the decedent, could not recover damages unless the decedent could have recovered for his injuries had he survived. This is a correct statement of the law. If the decedent's negligence would have barred his recovery against the defendant for injuries had he survived, then the decedent's heirs are barred from recovery in a wrongful death action. As the Court said in *Clark v. Foster*, 87 Idaho 134, 391 P.2d 853 (1964), in which it interpreted I.C. § 5–311, Idaho's wrongful death statute:

"It is true that I.C. § 5–311 does not contain the proviso common to most wrongful death statutes allowing the heirs to maintain an action for wrongful death only, 'Whenever the wrongful act would have entitled the person injured to maintain an action if death had not ensued.' However, for sixty years this jurisdiction and others have uniformly held that the statute should be interpreted as if it contained the above qualification. (Citations omitted). It is, therefore, well established in Idaho that the contributory negligence of a deceased is a bar to recovery in an action for his wrongful death under I.C. § 5–311." 87 Idaho at 144–145, 391 P.2d at 859.

The law under which *Clark v. Foster* was decided provided that a plaintiff would be barred from recovery against a negligent defendant whenever the plaintiff's own negligence contributed to his injury. The legislature changed this rule in 1971 by enacting I.C. §§ 6–801 *et seq.*, the comparative negligence act. That act allows a plaintiff whose own negligence contributed to his injury to recover against a negligent defendant if the plaintiff's negligence was "not as great" as the defendant's. Thus, a plaintiff's negligence contributing to his injury no longer necessarily bars his recovery, but it still remains a bar whenever his negligence is as great or greater than that of the defendant. *Fairchild v. Olsen*, 96 Idaho 338, 528 P.2d 900 (1974). In light of our past decisions such as *Clark v. Foster, supra,* the most reasonable way to construe the wrongful death statute with the comparative negligence statutes is to continue to read into the wrongful death statute the requirement that the plaintiffs can recover only, "whenever the wrongful act would have entitled the person injured to maintain an action if death had not ensued." Thus, if the jury had found that George Gailey negligently caused Richard Anderson's death and that Richard Anderson also negligently contributed to his death, Anderson's own negligence would have barred his recovery had he lived if it was as great or greater than that of Gailey. So also, it would bar his parents' wrongful death action if it was as great or greater than Gailey's. Accordingly, the trial court correctly instructed the jury upon this point.

The plaintiffs argue that the trial court erred by failing to give the jury instructions explaining the use of the special verdict form. We agree. The trial court should have instructed the jury by reading the special verdict to the jury and explaining it to the jury. *See e.g.,* IDJI 280–281.

The plaintiffs further argue that the court erred in giving the instruction defining the defense of assumption of risk.

This instruction was substantially identical to the plaintiffs' requested instruction, differing from their requested instruction only by substituting the name "Richard Anderson" for the term "decedent" and the term "plaintiff" for the name "Richard Anderson." By having requested this instruction, the plaintiffs were precluded from assigning it as grounds for reversal upon appeal, regardless of whether it was a correct statement of the law. I.R.C.P. 51(a)(1); *Hansen v. Howard O. Miller, Inc.,* 93 Idaho 314, 460 P.2d 739 (1969). *Jackson v. Bannock Bangas,* 97 Idaho 790, 554 P.2d 968 (1976).

The plaintiffs also object to the trial court's failure to give their requested instructions number 12 and 13. These instructions amplified the definition of assumption of risk contained in the court's jury instructions number 8 and 9. On retrial the instructions on assumption of risk should be reviewed by the trial court in the light of the recent opinion of this Court in *Lopez v. Allen,* 96 Idaho 866, 869–870, 538 P.2d 1170 (1975). *See also,* IDJI 260.

The plaintiffs also argue that the trial court erred in failing to give the jury the following instruction:

"The law presumes that Richard Anderson, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care. This presumption is a form of evidence. It will support a finding in accord with the presumption where there is no proof to the contrary." Rptr.Tr., Vol. 2, p. 501.

This Court considered an instruction of this kind in *Dewey v. Keller,* 86 Idaho 506, 388 P.2d 988 (1964), and said:

"No error appears in refusal to give this instruction. The principle of law outlined in such instruction is properly applied only where there are no witnesses or external evidence to indicate what the conduct of the decedent might have been immediately prior to his death. Where the details of an accident are available through eye witnesses or other external

evidence, the purpose of the presumption is served and the necessity for such instruction is removed." 86 Idaho at 518, 388 P.2d at 995.

As explained in *Dewey v. Keller,* an instruction of this kind is warranted only when there is no evidence of the decedent's conduct immediately prior to his death. In this case, there was testimony and circumstantial evidence concerning the precautions Richard Anderson had taken to protect himself before descending into the hole and while in the hole, so the trial court properly refused this instruction.

■ The plaintiffs have objected to the trial court's conduct of the trial with regard to comments upon the evidence, the scope of direct and cross examination allowed, and the admission or rejection of certain evidence. None of the trial court's rulings upon these matters constituted reversible error. Thus, because the case is being remanded for new trial, and because these rulings were within the trial court's discretion, it would serve no purpose to analyze them individually, and we shall not do so.

■ Finally, the plaintiffs argue that the trial court erred by refusing its requested "stock" instruction explaining to the jury its obligation to weigh the evidence. The given instruction differed from the requested instruction by its omission of the final sentence of the requested instruction: "Neither by these instructions nor by any ruling or remark which I have made do I or have I meant to indicate any opinion as to the facts." The requested instruction is IDJI 100; the given instruction omitted the final paragraph from the model jury instruction. While, under the circumstances of this case, it would have been better for the trial court to have given the complete instruction contained in the model jury instruction rather than omitting the final paragraph, I.R.C.P. 51(a)(2), the failure to do so is hardly error.

## FURTHER CONSIDERATION OF THE JURISDICTIONAL ISSUE UPON REMAND

In his affidavit in support of his motion for summary judgment, George Gailey averred that he filed a notice of injury with the Industrial Commission on or about July 25, 1973. The record shows that the plaintiffs filed an amended complaint with the district court on August 13, 1973, but it does not show when the original complaint was filed. The record does not contain any indication whether the Industrial Commission decided whether Richard Anderson's injury gave rise to a claim under the Workmen's Compensation Law.

■ Although the Industrial Commission and the district court have mutually exclusive jurisdiction for the award of benefits to an injured claimant or damages to an injured plaintiff, they have concurrent jurisdiction to determine whether they have jurisdiction to consider the claim or hear the case. *Scott v. Industrial Accident Commission,* 46 Cal.2d 76, 293 P.2d 18 (1956). As the Supreme Court of California said in *Scott:*

"The determinations of the commission, like those of the superior court, are res judicata in all subsequent proceedings, including court actions, between the same parties or those privy to them. (Citations omitted). Thus, if there is a final determination as to the matter of coverage (i. e., of jurisdiction) in either the commission or the superior court proceedings, such determination will be res judicata in subsequent proceedings before the other tribunal between the same parties or those privy to them." 293 P.2d at 22.

■ We adopt this rule for Idaho. Furthermore, because the wrongful death statute has been interpreted so that persons suing under that statute can recover damages only if the decedent could have recovered for his injuries if he had lived, we hold that the plaintiffs in this case would be bound by an Industrial Commission de-

 

termination of jurisdiction to which the decedent's estate was a party. *See Stample v. Idaho Power Co.*, 92 Idaho 763, 450 P.2d 610 (1969); *Gifford v. Nottingham*, 68 Idaho 330, 193 P.2d 831 (1948). On the other hand, an Industrial Commission determination that it did not have jurisdiction to consider the claim would be conclusive upon the defendant that the decedent's employment relation was outside the scope of coverage of the Workmen's Compensation Law. *Cf. Stample v. Idaho Power Co., supra; Gifford v. Nottingham, supra.* Therefore, because it appears there is a possibility that upon remand one party or the other may introduce into evidence an order of the Industrial Commission determining whether the Industrial Commission had jurisdiction to award death benefits under the Workmen's Compensation Law, we must decide what the effect of such an order would be.

 The two possible rules defining the authority of the Industrial Commission *vis-a-vis* the district court to determine jurisdiction are that the decision of the tribunal which first decides whether it has jurisdiction to consider the matter shall prevail or that the decision of the tribunal in which the matter is first filed shall prevail. In *Scott* the Supreme Court of California overruled existing case law in the intermediate California appellate courts which had decided cases under the former rule and instead adopted the latter—that the decision of the tribunal in which a matter is first filed shall prevail. We are persuaded by their reasoning.

"It has been suggested that to hold that the right to proceed in the exercise of jurisdiction shall depend on the fact of priority of invocation, will tend to promote a footrace to filing. It may be answered that initially both tribunals have jurisdiction to determine jurisdiction, and that if ultimate jurisdiction were to depend on the first final judgment, then we should still have the footrace but it would be a marathon rather than a sprint. With the law as it is, a race may be inevitable, but if it is, we prefer that it be a sprint." 293 P.2d at 25.

We recognize that adoption of either of the rules we have mentioned will undoubtedly lead to inconvenience in one case or another. However, like the California court, we prefer the sprint to the marathon and find that it gives a more workable rule of law. Accordingly, we hold that if the notice of injury was filed with the Industrial Commission before the plaintiffs filed their original complaint with the district court, then the Industrial Commission has the first right to determine the jurisdictional issue, and its determination is *res judicata* upon the question of jurisdiction and the factual questions upon which the determination of jurisdiction must necessarily turn.

Reversed and remanded. Costs to appellants.

McFADDEN, C. J., DONALDSON and SHEPARD, JJ., and THOMAS, D. J., concur.