657 P.2d 482

**Mark NELSON and Dorothy Nelson, husband and wife, Plaintiffs-Appellants,**

v.

**NORTHERN LEASING COMPANY; Hugh C. Hawkes; Sherm Hawkes; Hewitt Hawkes and Delores Hawkes, dba Marsh Valley Packing, Defendants-Respondents.**

No. 13987.

Supreme Court of Idaho.

Jan. 19, 1983.

Ronald George, Pocatello, for plaintiffs-appellants.

Louis F. Racine, Jr., Pocatello, for defendants-respondents.

SHEPARD, Justice.

This is an appeal by plaintiffs-appellants Nelson from a judgment entered upon the jury verdict which assigned to the Nelsons 60% of the comparative negligence in a wrongful death action brought by the Nelsons for the death of their one year old child. The principal question presented here is whether in such a wrongful death action the negligence of the parents is an affirmative defense as was allowed by the trial court in the instant case. We answer in the affirmative and affirm.

On October 2, the Nelsons purchased and immediately assumed the operation of a grocery store in Downey, Idaho from defendants-respondents Hewitt and Delores Hawkes. Prior to the sale, the Hawkeses, with their sons Hugh and Sherm, for several years had used the rear portion of the store for cutting and packing meat under the style of Marsh Valley Packing, and after the sale of the store, the Hawkeses continued operating that business under a lease agreement with the Nelsons. At the rear of the store, a door which opened onto a gravel parking lot was regularly used for truck loading by Marsh Valley Packing. In that same gravel parking lot at the rear of the store, the Nelsons had parked their mobile home for temporary residence. It was in that same gravel parking lot that one year old Barbara Nelson was playing at the time she was killed when struck by the Hawkeses' pickup truck.

On October 13, 1978, Dorothy and Mark Nelson spent the day working in the store. Their ten year old daughter Jane was ill and home from school and took care of one year old Barbara in the mobile home for most of the day. The other Nelson children arrived home from school in the mid-afternoon and at about 4:30, Dorothy Nelson allowed Mark, age 12, Jane, age ten, John, age seven, Ann, age six, and Barbara, age one, to play outside the mobile home. Jane was primarily charged with taking care of Barbara. Approximately five minutes before the accident, Dorothy Nelson noted that Jane was across the street in front of the store, and just immediately before the accident, Dorothy Nelson saw her son Mark come into the store to get a box. Thus, to Mrs. Nelson's knowledge, only her seven year old son and six year old daughter were left to care for the infant Barbara. Barbara's father, Mark Nelson, had no personal knowledge of who was actually caring for or with Barbara during that time, since Mrs. Nelson was routinely the supervisory parent.

At approximately 4:30 p.m., Hugh Hawkes backed his pickup adjacent to the back door of the store to load scraps. Sherm Hawkes was helping his brother Hugh and noticed the Nelson children, but

he did not see the baby Barbara. Hugh also had seen the children playing in front of the mobile home. Upon completion of loading the pickup, Hugh Hawkes drove the pickup approximately 25 feet, at which point he saw the child Barbara lying behind the truck in the gravel. The right side of the truck had struck her, breaking her skull and killing her instantly. The evidence at trial viewed in the light most favorable to sustain the jury verdict would indicate that Barbara had been playing under the truck when it was moved.

The Nelsons brought this action under the wrongful death statute, I.C. § 5–310, alleging that the negligence of Hugh Hawkes caused their daughter's death and that the negligence occurred while he was acting as an employee of Marsh Valley Packing. The defendant Hawkes asserted the defense of the negligence of the Nelsons and prior to trial the Nelsons moved for summary judgment striking that defense. That motion was denied. Following trial, the jury returned a special verdict attributing 60% of the negligence to the Nelson parents and 40% of the negligence to the defendants.

On appeal, the Nelsons assert that the court's instructions permitting and requiring the jury to consider the comparative negligence, if any, of the Nelsons were improper and they argue that the failure to properly supervise one's children is not a legally recognizable basis for negligence in Idaho. The Nelsons further assert that even if submission to the jury of the issue of the comparative negligence of the Nelsons was proper, the finding by the jury of negligence on the part of the Nelsons is not supported by the evidence.

The authorities in Idaho and in a great majority of the jurisdictions permit the contributory or comparative negligence of parents to be raised as a defense in a wrongful death action brought by parents of a deceased child. *York v. Pacific & Northern Railway Co.,* 8 Idaho 574, 69 P. 1042 (1902); *Holt v. Spokane & P.R. Co.,* 4 Idaho 443, 40 P. 56 (1895); cases collected, Annot., 2 A.L.R.2d 785 (1948). The principle behind the

allowance of such a defense is that no one should be permitted to profit from his own wrong. *Crevelli v. Chicago, Milwaukee & St. Paul R.R.,* 98 Wash. 42, 167 P. 66 (1917). *See generally,* V. Schwartz, Comparative Negligence ch. 13 (1974); S. Speiser, Recovery for Wrongful Death §§ 5:1–5:8, pp. 574–598 (2d ed. 1975); 22 Am.Jur.2d, Death § 110 (1965). *See also State ex rel. St. Louis S.F.R. Co. v. Pinnell,* 605 S.W.2d 537 (Mo.App.1980); *Schmidt v. Martin,* 212 Kan. 373, 510 P.2d 1244 (1973); *Bachman v. Lieser,* 289 Minn. 298, 184 N.W.2d 11 (1971); *Sanchez v. J. Barron Rice, Inc.,* 77 N.M. 717, 427 P.2d 240 (1967); *Mitchell v. Akers,* 401 S.W.2d 907 (Tex.Civ.App.1966); *Smith v. Henson,* 214 Tenn. 541, 381 S.W.2d 892 (1964); *Ditty v. Farley,* 219 Or. 208, 347 P.2d 47, 52 (1959); *Butler v. Temples,* 227 S.C. 496, 88 S.E.2d 586 (1955); *Sjoberg v. White,* 119 Utah 562, 230 P.2d 331 (1951); *Vinnette v. Northern Pac. Ry. Co.,* 47 Wash. 320, 91 P. 975 (1907).

The same holding has also been applied in jurisdictions in which parental immunity exists. *See, e.g., McClure v. Suter,* 63 Ill. App.3d 378, 20 Ill.Dec. 308, 379 N.E.2d 1376 (1978); *Brown v. Spokane County Fire Protection Dist. No. 1,* 21 Wash.App. 886, 586 P.2d 1207, 1213 (1978); *Willy v. Atchison, Topeka & Santa Fe Ry.,* 115 Colo. 306, 172 P.2d 958 (1946).

The same rule has been adopted in the Restatement, Second, Torts § 496:

"§ 496. Failure of Parent to Control Child

A parent is barred from recovery for harm to his legally protected interest in the services of his child if

(a) the child is so young as to be incapable of effectively exercising self-protective care, and

(b) the child's incapacity is a contributory factor in bringing about the harm or death, and

(c) the parent has failed to exercise reasonable care to prevent the child from placing itself in a situation in which its lack of self-protective capacity may reasonably be expected to result in harm to it."

The Nelsons assert that the decision of this Court in *Pedigo v. Rowley,* 101 Idaho 201, 610 P.2d 560 (1980), bars the defendants' asserted defense of the alleged negligent supervision of the child by the Nelsons. We disagree.

In *Pedigo,* an eleven year old girl was struck by a speed boat while she was floating on an air mattress in Lake Coeur d'Alene. She, through her guardian, brought suit against the owners of the boat for her injuries. The defendants sought to join the father of the child as a third party defendant on the theory that his negligent supervision of the child was a contributing proximate cause of the accident. It was asserted in *Pedigo* that the father was negligent in his supervision of the child, that such negligence would form the basis of a cause of action by the child against the parent, that her father was, therefore, a joint tortfeasor, and that he was or could have been liable for contribution in the event the child recovered a judgment against the owners of the boat. In *Pedigo* we disagreed with the basic premise of that assertion, *i.e.,* that the child had a cause of action against its parent and stated:

> "We are unwilling to adopt a categorical rule that universally prohibits parent-child actions on the basis of a total and absolute parental immunity. It is enough to say in the instant case, involving the relatively narrow area of parental immunity for *alleged negligent supervision,* no cause of action exists beyond that specified by our existing legislatively imposed sanctions.
>
> "There can be little argument but that the parental immunity of Mr. Garren from suit brought by his daughter Pedigo also bars third parties who are tortfeasors from seeking contribution." (Emphasis in original.) *Id.,* 101 Idaho at 205, 610 P.2d 560.

*Pedigo* does not require a change in the long standing rule in Idaho and other jurisdictions that the negligence of the parents may be asserted as a defense in an action brought by the parents for the wrongful death of a child. *Pedigo* was an action brought on behalf of the child. In the case at bar, the action is brought by the parents for their sole benefit. Under *Pedigo* parents may not be sued directly for the negligent supervision of their children, but on the other hand, as demonstrated in the case at bar today, parents may not personally profit from their own negligence.

The Nelsons also assert that, even assuming the propriety of the comparative negligence defense, the evidence does not support the jury's assignment of 60% of the comparative negligence to the Nelsons. The questions of negligence and proximate cause are questions for the jury as the trier of fact and the resolution of those questions will not be set aside on appeal if it is supported by competent and substantial evidence. *Mann v. Gonzales,* 100 Idaho 769, 605 P.2d 947 (1980). Here the evidence viewed from the most favorable standpoint in support of the jury's verdict can be held to demonstrate substantial negligence on the part of the Nelsons. The jury could well have believed that at the time in question the one year old child was able to walk; that the Nelsons parked their mobile home in an unfenced area used by automobiles and trucks; that the Nelsons, had they made reasonable inquiry, would have known of the traffic in the area; that the back door of the building was used by the Nelsons' tenant for loading trucks and the Nelsons had not notified their tenant to discontinue that use; that the parents had not checked on the children for at least an hour prior to the accident; and that Mrs. Nelson was aware that her older two children were not watching the baby. From these facts the jury could have concluded that any reasonable person would have foreseen a significant risk in allowing a one year old child to play virtually unattended in such an area. Hence, we hold the evidence is more than sufficient to support the jury verdict assigning 60% of the causal negligence to the defendants.

The judgment of the lower court is affirmed. Costs to the respondents. No attorney's fees allowed.

DONALDSON, C.J., BAKES and BIST-LINE, JJ., and WALTERS, J. Pro Tem., concur.