50 P.3d 997

Carl and Janet WOODBURN, and Carl Woodburn as Guardian Ad Litem of Cole Woodburn, a minor, and surviving brother of Tana Coleen Woodburn, Plaintiffs–Appellants,

v.

MANCO Products, Inc., an Indiana corporation, Defendant–Respondent,

and

Andrew G. and Athena L. Dunn, husband and wife, dba Three Point Tractor Co., and John Does 1–5, Defendants.

No. 26852.

Supreme Court of Idaho, Boise, March 2002 Term.

July 2, 2002.

White Peterson, Nampa, for appellants. William F. Gigray, III argued.

Quane, Smith, L.L.P., Boise and Ford, Marrin, Esposito, Witmeyer & Gleser, L.L.P., New York, New York for respondent. Stuart C. Levene argued.

WALTERS, Justice.

This case involves whether Idaho law requires the negligence of a decedent to be automatically attributed to the plaintiff/heirs in a wrongful death action, and whether the trial court committed reversible error in failing to give an instruction to the jury based on *Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683 (1978), which would have advised the jury of the effect of allocating negligence equally between the parties plaintiff and defendant. We hold that the district court did not err by aggregating the negligence of the decedent with that of plaintiffs and entering judgment in favor of the defendants. We also hold that the district court did not err by failing to give a *Seppi* instruction.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a wrongful death action brought by Janet and Carl Woodburn (the "Woodburns") for the death of their daughter, Tana Woodburn. Tana, then 13 years old, died while driving a go-cart designed and manufactured by Manco Products, Inc. ("Manco") when her hair became entangled in the chain and

sprocket drive of the go-cart and broke her neck.

On October 15, 1997, the Woodburns, individually and as the representatives of Tana's estate, filed a complaint and demand for jury trial against Manco and ThreePoint Tractor of Homedale, Idaho, the retailer of the go-cart, seeking damages for the wrongful death of Tana. On March 22, 2000, the jury trial commenced. Prior to the conclusion of the case, the Woodburns requested the jury be given a special verdict form, which combined the negligence of the Woodburns and Tana, and which included instructions for the jury, as follows:

QUESTION NO. 11. We find that the parties contributed to the cause of the accident in the following percentages:

(a) Plaintiffs Carl Woodburn and Janet Woodburn/Decedent Tana Woodburn _____%

(b) Defendant Manco Products _____%

If the percentage of causation for the Plaintiffs/Decedent is 50% or more, then you will not answer Question No. 12, but will simply sign the verdict form and inform the bailiff you are done.

If the percentage of causation for the Plaintiffs/Decedent is less than 50%, you will then answer Question Nos. 12 and 13....

The trial judge did not use the plaintiffs' proposed special verdict form. Instead, the district court gave the jury a special verdict form, which contained questions for the jury to answer (a) determining the basis of the parties' liability and (b) the respective percentages of fault of the Woodburns, for Tana, and for the defendant, Manco Products, Inc. The trial judge did not instruct the jury of the court's intent to aggregate the fault of the decedent with that of the plaintiffs, nor did he instruct the jury of the consequences of finding fault on the part of the decedent and the plaintiffs that equaled or exceeded 50%.

On April 4, 2000, the jury rendered a special verdict finding the go-cart to be in an unreasonably dangerous and defective condition. The jury found Manco 50% negligent, the Woodburns 40% negligent, and Tana 10% negligent. The jury also found damages of $205,425 for Carl Woodburn and $205,425 for Janet Woodburn.

Following the jury's verdict, the trial judge ruled that Idaho law required the negligence of the Woodburns to be aggregated with the negligence attributed to Tana. Because this resulted in a total of 50% negligence attributable to the Woodburns, the trial judge ruled that the plaintiffs were barred from recovery under Idaho's comparative fault statute, I.C. § 6–1304. The trial judge also denied the Woodburns' motion for a new trial for failure to give a *Seppi* jury instruction regarding the effect of a jury finding the Woodburns to be at least 50% liable for Tana's accident. The Woodburns appeal these decisions.

## ISSUES ON APPEAL

The Woodburns present two issues for resolution in this appeal. The first is whether the trial judge erred in holding that Idaho law requires the negligence of a decedent to be automatically attributed to the plaintiff/heirs in a wrongful death action. The second question is whether the trial judge erred in failing to give the Woodburns' requested jury instruction, or in refusing to grant a new trial for failing to give a *Seppi* instruction.

## STANDARD OF REVIEW

The issue regarding the attribution of a decedent's negligence to the heirs/plaintiffs in a wrongful death case involves a question of statutory interpretation. The determination of the meaning of a statute and its application is a matter of law over which this Court exercises free review. *Kelso & Irwin, P.A. v. State Insur. Fund,* 134 Idaho 130, 134, 997 P.2d 591, 595 (2000); *J.R. Simplot Co. v. Western Heritage Ins. Co.,* 132 Idaho 582, 584, 977 P.2d 196, 198 (1999). If it is necessary for this Court to interpret a statute, then this Court will attempt to ascertain legislative intent, and in construing a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A.* at 134, 997 P.2d at 595.

When reviewing a trial court's ruling on a motion for new trial, this Court applies an abuse of discretion standard. *State v. Davis,* 127 Idaho 62, 896 P.2d 970 (1995). In *Sun Valley Shopping Center v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991), this Court set out the test for evaluating whether a trial court has abused its discretion:

> (1) Whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*Id.* at 600, 768 P.2d at 1333 (quoting *Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 733 P.2d 824 (Ct.App.1987)).

## I.

**Did the trial judge err in holding that Idaho law requires the negligence of a decedent to be automatically attributed to the heirs in a wrongful death action?**

Preliminarily to consideration of this inquiry, we are confronted with the argument by Manco that the doctrine of invited error bars the appeal of this issue. Manco asserts that even if there was any error in aggregating negligence, the Woodburns invited the error by requesting that an aggregation instruction be given to the jury. The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to give or not give an instruction from later challenging that decision on appeal. *State v. Blake,* 133 Idaho 237, 240, 985 P.2d 117, 120 (1999). We conclude that the invited error doctrine is inapplicable in this case because the instruction the Woodburns requested was never given to the jury; rather, the trial judge decided to aggregate the negligence after the special verdict was completed by the jury.

The Woodburns contend the trial judge erred in aggregating the negligence of the Woodburns with the negligence of Tana. The applicable statutes relevant to this case involve wrongful death and products liability. Idaho Code § 5–311, with respect to wrongful death actions, provides:

> (1) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be maintained against such other person, or in case of his or her death, his or her personal representatives. In every action under this section, such damages may be given as under all the circumstances of the case as may be just.
>
> . . . .

Idaho Code § 6–1304, with respect to comparative negligence, provides in pertinent part:

> Comparative responsibility shall not bar recovery in an action by any person or his legal representative to recover damages for product liability resulting in death or injury to person or property, if such responsibility was not as great as the responsibility of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of responsibility attributable to the person recovering.

The trial court's decision to aggregate the negligence allocated by the jury to Tana with that of the Woodburns was based upon *Adams v. Krueger,* 124 Idaho 74, 856 P.2d 864 (1993). *Adams* stands for the proposition that a plaintiff's negligence *can* be imputed to another plaintiff (a husband and wife in this case), if there is an independent legal basis to do so (*e.g.* vicarious liability and community property). In *Adams,* the plaintiff filed a malpractice claim against a doctor and the doctor's nurse. At trial, the jury found the nurse 41% negligent, the doctor 10% negligent, and the plaintiff 49% negligent. The plaintiff argued that the negligence of the defendants should be aggregat-

ed, allowing the plaintiff to recover. The trial court agreed and entered judgment against the doctor and the nurse. On appeal, this Court held the trial court properly imputed the nurse's negligence to the doctor under the doctrine of *respondeat superior*. With respect to the negligence of the plaintiffs, the Court also upheld the trial court's decision to impute the wife's negligence to her husband's loss of consortium claim, reasoning:

> I.C. § 6–801 and 6–802 (1986 Supp.), tort and agency law may require that the court charge an individual plaintiff with the negligence of another, even though the plaintiff has played no active role in bringing about the harm.... Patrick's loss of consortium claim is wholly derivative from DiAnn's right of action against the defendants.... Similarly, in an heir's action for wrongful death, the negligence of the decedent is imputed to the plaintiff.

*Adams* at 76, 856 P.2d at 866 (citations omitted).

■ The Woodburns argue that the policy behind the enactment of the wrongful death statute was to allow an heir to recover for his or her own damages suffered by the death of a relative, and that these damages are separate from the injuries suffered by the decedent. They argue that the damages claimed are derivative only in the sense they would not have arisen but for the death of the decedent. While this contention is true, it is only a partial statement of the law. The derivative nature of a wrongful death claim bars recovery by the plaintiff if the negligence of the decedent is as great as or greater than that of the defendant. *Bevan v. Vassar Farms, Inc.*, 117 Idaho 1038, 1042, 793 P.2d 711, 715 (1990) ("If a defendant's conduct does not make him liable to an injured party, then that defendant cannot be held liable in the event of death for damages resulting from the same conduct. Thus there is no basis for recovery of damages by the heirs of the decedent in this case because fifty percent of the negligence was apportioned to him."). Because of the derivative nature of the Woodburns' wrongful death

claim, the Woodburns argue that their and Tana's negligence should not be aggregated for purposes of determining whether they should recover, but should only be used to reduce the damages they may recover, as was done in *White v. Lunder*, 66 Wis.2d 563, 225 N.W.2d 442 (1975).

This Court has consistently followed the well-established precedent in Idaho case law which construes the wrongful death statute and the comparative negligence statutes, holding that "[i]n an heir's action for wrongful death, the negligence of the decedent is imputed to the plaintiff." *Adams v. Krueger*, 124 Idaho at 76, 856 P.2d at 866, *citing* (*Anderson v. Gailey*, 97 Idaho 813, 555 P.2d 144 (1976)). Furthermore, the instant case presents no reason to depart from the principle articulated in *Bevan*, that

> [i]n an action for personal injuries, a plaintiff cannot recover when it is proven by the evidence that his negligence was a proximate cause of his injury, and that his negligence was equal to or greater than the negligence of the defendant notwithstanding that the evidence may also show negligence on the part of the defendant.

*Bevan* at 1041, 793 P.2d at 714.

The Woodburns argue the "individual rule" should apply and each plaintiff's liability should be compared individually to that of each defendant in determining whether the Woodburns can recover. In support of this contention, they point to I.C. § 6–803, which expressly eliminates the common law doctrine of joint and several liability among tortfeasors (minus a few inapplicable exceptions), maintaining this is evidence of legislative intent that a party should not be held liable for the actions of another party unless there is some independent agency type of relationship. To follow this line of reasoning, however, could potentially allow a plaintiff/heir to recover from a defendant who did not actually cause the death. This goes against the basic premise of Idaho's comparative fault statute: the wrongful act of another must have caused the death of the decedent.[1]

---

1. The Woodburns do not address the principle that parents should not be allowed to profit from their own negligence. *Nelson v. Northern Leasing Co.*, 104 Idaho 185, 657 P.2d 482 (1983).

■ The Woodburns also argue that when a suit is brought on behalf of a child for injuries suffered, the tortfeasor cannot use the negligence of the parents as a defense to his or her own liability, *Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560 (1980), and this concept should equally apply in the wrongful death context. However, this concept only arises as a result of parental immunity, barring third parties who are tortfeasors from seeking contribution. *Id.* The policy behind this rule is to eliminate the possibility of reducing the child's compensation by means of apportionment with the negligent parent. *Id.* This rationale is inapplicable here, as the child is deceased, and can no longer make any claim for compensation.

Next, the Woodburns argue that there is no basis for imputing Tana's negligence to the Woodburns, as Idaho law is clear that the parent is generally not liable for the tortious act of his or her child. While this contention is true, it is irrelevant to the case at hand, because this has nothing to do with wrongful death of a child.

Based on the long established precedent in Idaho case law, which construes the wrongful death statute and the comparative negligence statutes to aggregate the deceased's negligence with that of the plaintiff, this Court affirms the trial judge's decision to aggregate the Woodburns' negligence with Tana's.

## II.

**Did the trial judge err in failing to give the Woodburns' requested jury instruction, and in refusing to grant a new trial for failing to give a *Seppi* instruction?**

■ The Woodburns argue the trial judge should have given the jury an instruction based upon *Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978). A *Seppi* instruction explains to the jury what would happen if the jury found the Woodburns and Tana's aggregated negligence equal to or greater than that of the defendant's negligence.

Whether to give a *Seppi* instruction in any case is a discretionary decision to be made by the trial court. Manco points out that the Woodburns failed to comply with I.R.C.P. 51(a)(1) in making alleged written request for a *Seppi* instruction, because their proposed special verdict form was filed untimely under I.R.C.P 51(a). That rule provides:

No later than five (5) days before the commencement of any trial by jury, any party may file written requests that the court instruct the jury on the law as set forth in such request, and such requested instructions must be served upon and received by all parties to the action at least five (5) days before the commencement of the trial. The court shall not be required to consider any requested instructions not filed and served upon the parties as required by this *but the court may reasonably permit any party to file and serve written requests for instructions at any time up to and including the close of the evidence at the trial upon the grounds that such requested instructions concern matters arising during the trial of the action which could not reasonably have been anticipated by the party requesting such instructions or were overlooked in the original requested instructions.* (Emphasis added.)

The question of the allocation of negligence in this case was a matter that existed prior to the commencement of the trial in this case. I.R.C.P. 51(a) clearly required the Woodburns to timely tender their proposed jury instruction. Furthermore, the verdict form requested by the Woodburns and rejected by the district court was not worded as a *Seppi* instruction, but covered several matters, one of which was a warranty issue that was erroneous and had been dismissed as a claim by the district court. Under these circumstances and because we conclude that the requested verdict form did not suffice to serve as a proposed jury instruction, the district court did not abuse its discretion in refusing to give the special verdict form untimely proffered by the Woodburns.

Although the Woodburns also contend that aside from consideration of the special verdict form they proposed, the district court should have given a *Seppi* instruction of its own volition, we are not persuaded. In its ruling on the Woodburns' motion for a new trial, the district court explained its reason-

ing for concluding that a *Seppi* instruction would not be given in this case. It appears that the district court understood that it had the discretion whether to give such an instruction, the judge explained his rationale for not giving the instruction, and the judge's decision did not exceed the boundaries allowed for the exercise of his discretion in this regard. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 803 P.2d 993 (1991); *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 733 P.2d 824 (Ct.App.1987). We uphold the district court's discretionary decision not to give a *Seppi* instruction.

### CONCLUSION

The district court did not err in aggregating the negligence of Tana Woodburn with the negligence of her parents, the plaintiffs. The district court did not err in failing to give a *Seppi* instruction to the jury. The judgment below is affirmed. Costs on appeal are awarded to the respondent. No attorney fees are awarded.

Justices SCHROEDER, EISMANN and Justice Pro tem McLAUGHLIN, concur.

WILLIAMSON, Justice Pro tem, dissenting.

I respectfully dissent.

Prior to the submission to the jury, the Woodburns requested special verdict language that required the jury to determine the combined negligence of the Woodburns and Tana. The proposed instruction then told the jury not to determine damages if their combined negligence was 50% or more. The trial judge did not use the language from this proposed special verdict instruction, but instead instructed the jury to determine separately the negligence of the Woodburns, Tana and Manco Products, Inc. It then told the jury to determine the total damages suffered by the Woodburns. The jury attributed 40% negligence to the Woodburns, 10% to Tana, and 50% to Manco. The jury was not told that the trial court intended to impute the negligence of Tana to the Woodburns nor of the consequences of finding that the joint negligence of the plaintiffs and Tana was 50%.

*Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978), and the holding of the court today create confusion for the bench and bar. *Seppi*, which concerned an issue of first impression, stated:

> [I]t is not reversible error for the court to inform the jury of the effect of apportioning 50% or more of the negligence to the plaintiff. Though we believe in most cases such an instruction is fully warranted, *we conclude that the trial courts should be given discretion not to so inform the jury in those cases where the issues are so complex or the legal issues so uncertain that such instructions would confuse or mislead the jury* (emphasis added).

*Id* at 195, 579 P.2d at 692.

*Seppi* implies that such an instruction should or must be given, unless the issues are so complex or uncertain that such an instruction would confuse the jury, in which event the court has discretion not to give the instruction. Otherwise, the instruction is to be given if requested. The majority opinion today leaves the bench and bar with the impression that whether or not to give a *Seppi* instruction is a discretionary decision regardless of the complexity of the case.

The court should hold that a *Seppi* instruction should be given if requested unless the "issues are so complex or uncertain that such an instruction would confuse or mislead the jury". *Id.* at 188, 579 P.2d at 685. In *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 761 P.2d 1169 (1988), the court held that "the trial court should instruct the jury on the consequences of the special findings which they make in their verdict." *Id. at* 832, 761 P.2d at 1184. The trial court has the duty to give proper instructions. *State v. Eastman*, 122 Idaho 87, 831 P.2d 555 (1992); *Hodge v. Borden*, 91 Idaho 125, 417 P.2d 75 (1966).

In this case the issues were not complex or uncertain. The Woodburns requested the equivalent of a *Seppi* instruction in their proposed special verdict language. I believe the trial court should have given a *Seppi* instruction and should have further instructed the jury that the negligence of Tana would be aggregated with the Woodburns.

By not informing the jury that the effect of attributing Tana's negligence to the Woodburns would result in apportioning 50% or more of the negligence to the Woodburns, or of the effect of a 50% negligence finding, this likely caused an unjust result and produced a judgment which did not reflect the wisdom of the jury or their view of the facts, but only their ignorance of Idaho law. *Seppi*, 99 Idaho at 194, 579 P.2d 683. The jury found the total damages suffered by Carl Woodburn and Janet Woodburn to be $205,425.00 each. Having found the plaintiffs to be 40% negligent, the jury could reasonably believe the Woodburns would each receive 60% of their verdict. Additionally, had the jury speculated that Tana's negligence would be attributed to the Woodburns, they could also have reasonably believed the Woodburns would receive at least 50% of their verdict. The jury could also have believed the Woodburns would receive all the damages awarded since they were not told there would be any reduction.

In determining whether or not to grant a new trial, the trial judge did not find that the Woodburns' requested proposed special verdict language was untimely, but rather believed giving the instruction was a matter of his discretion. It's the argument of this dissent that once the request was made, the trial court had a duty to correctly instruct the jury on the law and should have given a *Seppi* instruction. The Woodburns were prejudiced by the failure of the trial court to give the instruction, and the plaintiffs were also prejudiced by the trial court's failure to advise the jury of the fact that the negligence of Tana would be added to that of her parents. If this case had been tried to the court and not to the jury, the judge would have known these things when determining an appropriate verdict. Should not the jury be also advised?

This case should be remanded for a new trial.